**Affirmed and Opinion filed October 27, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00412-CV

**JOSEPH PEINE, Appellant**

**V.**

**HIT SERVICES L.P., WOOD GROUP USA, INC., JOHN WOOD GROUP PLC, WOOD GROUP POWER GP, LLC, AND WOOD GROUP MANAGEMENT SERVICES, INC., Appellees**

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-60099**

### O P I N I O N

This is an appeal from an order granting a traditional motion for summary judgment. Appellant Joseph Peine sued appellees, HIT Services, L.P., Wood Group USA, Inc., John Wood Group PLC, Wood Group Power GP, LLC, and Wood Group Management Services, Inc., alleging that he was wrongfully discharged for refusing to commit a crime. Peine argues on appeal that the trial

court erred in granting appellees' motion for summary judgment because the summary judgment evidence showed a genuine issue of material fact on whether his refusal to commit a criminal act was the sole cause of his termination. We overrule Peine's issue because the summary judgment evidence conclusively proved that he was terminated, at least in part, because he breached his confidentiality duties when he sent confidential company information to a reporter. We therefore affirm the trial court's summary judgment.

## BACKGROUND

Peine is a certified public accountant. Appellee HIT Services, L.P., hired him as its Chief Financial Officer (CFO) in February 2007. HIT Services is part of the Heavy Industrial Turbines Strategic Business Unit, which is in turn a division of appellee John Wood Group, PLC, a multinational corporation.

According to Peine's summary judgment evidence, HIT Services was a troubled company with a history of inflating its earnings. Peine alleged he was hired by HIT Services as part of an effort to turn the company's performance around. The letter in which HIT Services offered Peine the CFO job stated: "in this role, you will be responsible for all finance and accounting aspects as it relates to the management of the business including financial reporting, month/year end closings, budgeting, forecasting, profitability analyses, management of accounting department/personnel and other associated responsibilities . . . ." Peine also served as secretary of Wood Group Power GP, LLC, the general partner of HIT Services. In that position, Peine served as an officer of the company and was charged with the responsibility of ensuring "that appropriate filings are made on time and accurately."

Due to his various responsibilities, Peine reported to different supervisors. One of those supervisors was Durg Kumar, the financial director for the Heavy

Industrial Turbines Strategic Business Unit. Peine alleged that in December 2008, Kumar instructed him to overstate HIT Services' profits by approximately $2.5 million. According to Peine, Kumar ordered him to falsify records by booking the entire value of a project with a sister company, Wood Power Solutions, even though HIT Services had not yet completed the project. Peine refused, believing such an action would violate accounting standards and the law. Peine alleged that Kumar threatened to "clean house" if Peine and his staff did not follow Kumar's orders.

In January 2009, Peine brought the matter to the attention of Scott Jessiman, the controller of the Heavy Industrial Turbines Strategic Business Unit. As a result of his conversations with Jessiman, Peine "prevailed and the income was not overstated in HITS' books." Instead, Jessiman authorized Peine to close HIT Services' 2008 accounting out of balance with Wood Power Solutions. According to Peine, HIT Services did not materially misstate its 2008 performance as a result of Jessiman authorizing this action. The next month, Kumar called Peine into his office and told him that "it was not working out" and that he needed to learn how to "play the game." Peine was not fired at that time, however.

That same month, Peine met with Chris Wilkinson, the president of HIT Services, to discuss his problems with Kumar. Wilkinson told Peine he would report the problems to Nick Blaskoski, the president of the Heavy Industrial Turbines Strategic Business Unit. Peine also reported the issue to Grant Johnston, the Wood Group's Western Hemisphere Controller. Johnston asked Peine for time to fix the problem.

According to Peine, he discovered in July 2009 that Kumar was going around him and his staff to book substantially inflated earnings estimates for jobs in June 2009. Peine reported the problem to Johnston. Johnston told Peine that the

earnings estimates were internal numbers only and were not reported externally. Johnston directed Peine to correct the earnings estimates by the end of the year.

In the ordinary course of his responsibilities to certify HIT Services' financial condition on a quarterly basis, Peine objected to attesting to the accuracy of the July 2009 quarterly certification because he believed HIT Services' accounting data contained false information. As a result, Peine believed that signing the quarterly certification without qualifying language would constitute tax fraud. Peine sent a letter to Wilkinson explaining his position: "although we are unaware of any material misstatement in our financial statements, based on our documented experience, we have serious concerns about the Internal Control Environment . . . ." Appellees did not order Peine to sign the certification without qualifying language. Instead, they acceded to his concerns. Wilkinson and Kumar inserted language qualifying the reported numbers, and with that concession, Peine signed the quarterly certification.

That same month, Peine reported his concerns about Kumar's actions to Todd Harper, a John Wood Group corporate officer working in the Shared Services Department. Shared Services was absorbing some of the accounting functions that had been performed internally at HIT Services. Harper, in turn, reported Peine's complaints to Christopher Watson, the CFO of the Gas Turbine Division of the John Wood Group. Watson told Harper to conduct an independent review of Peine's allegations.

On July 27, 2009, Harper warned Peine that he would be fired if he did not withdraw his accusations against Kumar. Harper explained that one or the other would be fired and it would most likely be Peine because Watson did not believe his accusations. Peine refused to withdraw his accusations against Kumar. Peine was not fired at that time. Instead, on July 28, Harper forwarded to Watson the

4

documents that Peine had provided to him in support of his claims. Watson then consulted with Blaskoski, the president of the Heavy Industrial Turbines Strategic Business Unit, and they ordered the John Wood Internal Audit Department to investigate Peine's accusations.

On July 30, Peine, believing "there was an endemic, serious, catastrophic failure within Wood Group and that they weren't going to do anything to fix it," emailed internal company documents to Robert Gibbons, a Thomson Reuters reporter. These documents included not only those Peine had previously sent to Harper, but also additional documents, including earnings forecasts. In his email to the reporter, Peine wrote: "Let's give them a chance to fix it . . . . if they choose not to, you have a front row seat."

On August 6, Western Hemisphere Controller Johnston emailed Gas Turbine Division CFO Watson about Peine's calls reporting problems at HIT Services. Watson responded: "Joe is a liability and please do not take anything he says at face value. I will call you later to discuss." Watson then forwarded Johnston's email to Blaskoski, writing: "Nick. We need to take action now. Chris."

Peine and his staff then sent a letter and accompanying documents to Wilkinson, HIT Services' president, explaining their concerns about the company's accounting issues. Wilkinson turned those documents over to the personnel conducting the internal audit. After receiving the documents, Abby Yates, an in-house attorney involved in the audit, recommended that Peine be placed on paid leave pending the completion of the investigation. Yates also recommended that Kumar be removed from his position overseeing HIT Services' accounting functions during the investigation. Both recommendations were accepted and implemented.

During the course of the internal audit into Peine's accusations, Yates

5

learned that Peine had sent confidential company documents to a reporter. When confronted with his email to the reporter, Peine admitted that he had sent both the email and the documents to the reporter. Yates recommended that Peine be terminated immediately for violating his confidentiality obligations. Company management did not oppose terminating Peine, and he was terminated on September 16, 2009.

Peine then sued appellees, alleging that he was wrongfully terminated for refusing to perform the illegal act of falsifying HIT Services' financial records by inflating earnings.[1] Appellees eventually filed a traditional motion for summary judgment, asserting that the summary judgment evidence conclusively proved that Peine's refusal to perform an illegal act was not the sole cause of his termination, thereby defeating his *Sabine Pilot* cause of action.[2] *See Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985) (creating narrow exception to employment-at-will doctrine to provide cause of action to employee terminated "for the sole reason that the employee refused to perform an illegal act."). The trial court granted the motion and this appeal followed.

## ANALYSIS

Peine argues that the trial court erred when it granted appellees' motion for summary judgment because the summary judgment evidence he produced generated a genuine issue of material fact on whether his refusal to commit an illegal act was the sole cause of his termination. We disagree.

[1] Appellees did not move for summary judgment on the ground that the allegedly illegal act underlying Peine's lawsuit, falsifying HIT Services' earnings, was not in fact illegal. We therefore assume, for purposes of this appeal, that the act appellees ordered Peine to do was illegal.

[2] We previously reversed a summary judgment for appellees because they did not present grounds for summary judgment in their motion itself. *Peine v. HIT Servs., L.P.*, No. 14-12-00991-CV, 2014 WL 586430 (Tex. App.—Houston [14th Dist.] Feb. 13, 2014, no pet.). On remand, appellees did present grounds in their motion as discussed above.

## I.    Standard of review and applicable law

We review a trial court's order granting summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who conclusively negates an essential element of a plaintiff's claim is entitled to summary judgment on that claim. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Evidence is considered conclusive if reasonable people could not differ in their conclusions. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

The general rule in Texas is that an employee may be terminated at will and without cause. *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). In *Sabine Pilot*, the Supreme Court of Texas created a narrow public policy exception to the employment-at-will doctrine. 687 S.W.2d at 735. This exception allows an employee to sue for wrongful termination if he is fired for the sole reason that he refused to perform an illegal act. *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995); *see Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 664 (Tex. 2012) ("A plaintiff may not bring a *Sabine Pilot* claim immediately after being asked to perform an illegal activity, but must first refuse and be fired."). A *Sabine Pilot* plaintiff has the burden of proving by a preponderance of the evidence that his discharge was for no reason other than the refusal to commit an illegal act—in other words, the refusal was the sole cause of his discharge. *Hinds*, 904 S.W.2d at 633. If an employer discharges an employee both for refusing to perform an illegal act and for a legitimate reason, it cannot be

liable for wrongful discharge. *Id.*

**II. Appellees conclusively proved a legitimate reason for discharging Peine, and Peine's evidence does not create a genuine issue of material fact on his *Sabine Pilot* cause of action.**

Peine's *Sabine Pilot* cause of action is based on his allegation that he was terminated for refusing to commit an illegal act. Appellees could obtain summary judgment on this cause of action by proving, as a matter of law, at least one legitimate reason for terminating Peine. *See id.* Appellees' summary judgment evidence conclusively established that one reason for terminating Peine was his disclosure of confidential information to a reporter. *See Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 724–25 (Tex. 1990) (declining to extend *Sabine Pilot* exception to include employees who are discharged for reporting illegal activities). This evidence includes, among other things, Peine's own admissions that he sent confidential information to a reporter and that a violation of HIT Services' confidentiality policy constituted a terminable offense. *See Robinson v. Devereux Foundation*, No. 14-01-00081-CV, 2002 WL 1315631, *3 (Tex. App.—Houston [14th Dist.] June 6, 2002, pet. denied) (holding employer entitled to summary judgment on *Sabine Pilot* claim because it conclusively proved other reasons for termination, including some admitted by employee, thereby negating essential element that sole reason for termination was refusal to perform illegal act).

On appeal, Peine does not dispute the evidence showing that (1) he sent internal company documents to a reporter, and (2) the stated reason for his termination by HIT Services was his breach of his confidentiality obligations he owed to his employer. Instead, citing *Continental Coffee Products v. Cazarez*, 937 S.W.2d 444 (Tex. 1996), Peine asserts that direct evidence and inferences from circumstantial evidence in the summary judgment record create genuine issues of

material fact regarding whether he was terminated for refusing to perform an illegal act.

In *Casarez*, the supreme court examined the types of evidence that are legally sufficient to establish a causal link between an employer's termination of an employee and the employee's filing of a workers' compensation claim, thereby shifting the burden to the employer to show a legitimate reason for the termination. *Id.* at 450–51; *see also Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 66–67 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Because a plaintiff in a workers' compensation retaliatory-discharge case is not required to prove that his termination was caused solely by his filing of a claim, we conclude this standard from *Cazarez* does not apply here. *Compare Safeshred*, 365 S.W.3d at 662 (confirming sole causation standard for *Sabine Pilot* claim), *with Cazarez*, 937 S.W.2d at 451 n.3 (stating that plaintiff need not prove that filing of workers' compensation claim was sole cause of her termination). Instead, we consider whether the evidence and inferences Peine identifies create a genuine issue of material fact regarding the element of his claim that he was terminated solely for refusing to perform an illegal act.

## A.   Peine has not presented direct evidence that he was fired solely for refusing to commit an illegal act.

Initially, Peine puts forward what he considers "direct evidence" that he was terminated solely because he refused to perform an illegal act. This evidence includes: (1) Kumar's threat to "clean house" if Peine did not follow his orders; (2) Harper's warning to Peine that, if he did not retract his statements about Kumar, he would be fired; (3) Watson's email to Grant Johnston that "Joe is a liability and please do not take anything he says at face value. I will call you later to discuss;" and (4) Watson's email to Blaskoski stating: "Nick. We need to take action now.

9

Chris." According to Peine, this evidence constitutes direct evidence that he was fired solely because he refused to perform an illegal act. We disagree.

Direct evidence is evidence that, if believed, proves the fact without inference or presumption. *See College of the Mainland v. Glover*, 436 S.W.3d 384, 392 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The evidence detailed above is circumstantial rather than direct evidence because, among other things, it does not address whether any of the speakers had a role in Peine's firing. Thus, an inference would be required to reach Peine's suggested conclusion that he was fired solely for refusing to perform an illegal act. We discuss below whether the record supports such an inference.

**B.      Peine's circumstantial evidence does not generate a fact issue.**

In *Cazarez*, the supreme court listed some types of circumstantial evidence that an employee can use to establish, as part of his prima facie case, a causal link between his termination and his filing of a workers' compensation claim. 937 S.W.2d at 451. This includes evidence that: (1) those making the decision to terminate an employee have knowledge of the workers' compensation claim; (2) expression of a negative attitude toward the employee's injuries by those making the termination decision; (3) a failure to adhere to established company policies; (4) discriminatory treatment in comparison to other similarly-situated employees; and (5) evidence that the stated reason for the employee's termination was false. *Id.* Even if we assume that such circumstantial evidence could, in some cases, also create a fact issue on the sole-cause element of a *Sabine Pilot* claim, we conclude Peine has not identified a genuine issue of material fact regarding whether he was terminated solely because he refused to perform an illegal act. We discuss each of the categories of circumstantial evidence and suggested inferences that Peine references in his appellate briefing.

10

### 1. Statements by division-level employees do not support an inference that Peine was terminated for refusing to perform an illegal act.

We turn first to the evidence Peine initially argued was direct evidence: (1) Kumar's threat to "clean house" if Peine did not follow his orders; (2) Harper's warning to Peine that he would be fired if he did not retract his statements about Kumar; (3) Watson's email to Johnston, the Wood Group Western Hemisphere Controller, that "Joe is a liability and please do not take anything he says at face value. I will call you later to discuss;" and (4) Watson's email to Blaskoski, the president of the Heavy Industrial Turbines Special Business Unit, stating: "Nick. We need to take action now. Chris." According to Peine, this evidence supports an inference that his corporate superiors decided to terminate him for refusing to perform an illegal act because it demonstrates they had a negative attitude toward him and possessed knowledge of his refusal. We disagree.

With regard to Kumar's threat, the undisputed summary judgment evidence established that it was made some eight months before Peine was terminated. The evidence also was undisputed that Kumar had been removed from any role supervising Peine and the HIT Services accounting team pending the outcome of the internal investigation. The undisputed evidence further established that this removal occurred before the decision was made to terminate Peine. Kumar's threat, therefore, cannot support an inference that Peine was terminated for refusing to commit an illegal act. *See M. D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) (holding that stray remarks, remote in time from plaintiff's termination, and not made by a person directly connected with the decision to terminate the plaintiff, are not enough to raise a fact issue on whether stated reason for termination was false).

The same reasoning applies to any statements or actions by Harper. Peine

has not pointed to any evidence in the summary judgment record demonstrating that Harper had any role in the decision to terminate him. Therefore, Harper's warning cannot support Peine's suggested inference. *Id.*

Turning to Watson's emails, the summary judgment evidence indicates Watson did not make the decision to terminate Peine, but was instead asked only if he had any objection to Peine being terminated. Watson testified that he did not object because Peine had disclosed confidential company documents. Even if we assume this evidence is sufficient to establish that Watson was directly connected with the decision to terminate Peine, we conclude that Peine's suggested inference from those emails is not reasonable. *See Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex. 2015) ("Circumstantial evidence can establish actual knowledge but such evidence must either directly or by reasonable inference support that conclusion.") (internal quotation marks omitted).

Although Peine argues that Watson's emails support an inference that he was fired for refusing to falsify HIT Services' internal financial books, other evidence in the record suggests an alternative view. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (stating, in an appeal from a judgment following a jury trial, that even when the evidence is viewed in the light most favorable to the challenged verdict, it must be viewed in its proper context with other evidence). This evidence, including Watson's own deposition testimony, establishes that an internal audit had been ordered to investigate Peine's accusations. According to Watson, his email to Blaskoski referred not to firing Peine, but to moving forward on that investigation into Peine's accusations. There was also evidence in the record that upper management was growing increasingly concerned about Peine's performance as CFO and that management had directly expressed those concerns to Peine shortly before he went to Harper in July 2009.

A fact may not be inferred from circumstantial evidence that could support multiple inferences if none are more probable than the others. *Smith v. Landry's Crab Shack, Inc.*, 183 S.W.3d 512, 514 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Suarez*, 465 S.W.3d at 634 ("An inference is not reasonable if it is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion."). Even when viewing Peine's proffered evidence in the light most favorable to him, his suggested inference is, at best, no more probable than appellees' suggested explanation for the emails. Therefore, it is not reasonable and does not create a genuine issue of material fact sufficient to avoid summary judgment. *See Suarez*, 465 S.W.3d at 634 (affirming grant of plea to the jurisdiction after concluding that plaintiff's evidence raised two equally possible inferences, one that governmental entity had subjective awareness of dangerous condition, the other that it did not, and therefore constituted no evidence that governmental entity was subjectively aware of the danger).

Additionally, Peine's proposed view of Watson's emails—that he was fired solely for refusing to commit an illegal act—would require the court to impermissibly stack one inference on another. With respect to Watson's email to Johnston, the multiple inferences required include: (1) Watson was referring to Peine as a liability because he had refused to go along with falsifying HIT Services' books (rather than due to poor performance as CFO) more than six months before; (2) Watson also communicated those same concerns to Yates; and (3) Yates decided to fire Peine solely for that reason. Turning to Watson's email to Blaskoski, we would have to infer: (1) that Watson was referring to Peine; (2) that the action they had to take immediately was to fire Peine; and (3) that they had to fire Peine solely because he had refused to falsify HIT Services' books more than six months before. We may not stack one inference on top of another to create a

13

fact issue. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (explaining that an inference stacked on other inferences is legally insufficient evidence); *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 373 (Tex. App.—El Paso 2011, no pet.) ("Stacking inferences is insufficient to create a fact issue precluding summary judgment."); *Rivas v. City of Houston*, 17 S.W.3d 23, 28 (Tex. App.—Houston [14th Dist.] 2000, pet. den.) ("[A] vital fact may not be established by stacking an inference upon an inference."). Moreover, even if the first two inferences were reasonable, Watson's emails would at most suggest that Peine's refusal to perform an illegal act was a reason for his firing. Particularly in light of the evidence discussed above regarding other reasons for Peine's firing, Watson's emails do not support an inference that the refusal was the sole reason for his firing. Therefore, Watson's emails do not create a fact issue on the sole-cause element of Peine's *Sabine Pilot* claim.

To the extent Peine argues that Yates—the person the undisputed summary judgment established made the decision to terminate him—possessed a negative attitude toward him, he does not point to any evidence in the record supporting that contention. Accordingly, we conclude this argument also does not create a fact issue.

### 2. *Peine offered no evidence that the decision to terminate him was made in violation of company policy.*

Peine next argues that the decision to terminate his employment was not made in compliance with company policy, which creates an inference that the stated reason he was terminated was false. Here, the evidence was undisputed that Yates made the decision to terminate Peine's employment after she learned he had sent confidential company information to a reporter. According to Peine, an in-house attorney firing an employee violated company policy. Peine does not,

14

however, point to any evidence in the record establishing which policy was violated and how Yates firing him violated it. Instead, Peine quotes a statement his attorney made in posing a question during Watson's deposition: "Well, Mr. Blaskoski told me Abby Yates made the decision. But that's a managerial decision and not a lawyer decision." Watson's answer did not confirm that Yates firing Peine violated a company policy, and Peine does not point to any other witness who so testified. Because Peine offered no evidence that company policy was violated when he was terminated, this argument does not create a fact issue.

### 3.    *The outside auditor's report is not evidence that Peine was terminated for refusing to perform an illegal act.*

Peine also argues that an outside auditor's report regarding the events surrounding his termination supports an inference that the stated reason for his termination was false. According to the report,

> [d]uring the year, the financial controller of HIT Services LP made a number of allegations against his superiors at a local and divisional level. Since the original allegations were made, the employee was suspended and later left the Group. These allegations have been made public and the employee pursued a number of potential legal claims against the Group, all of which have been unsuccessful.

Peine contends the auditor misstated the facts surrounding his termination because it reported that he (1) was suspended rather than placed on paid leave, and (2) had left the Group rather than specifically stating he had been terminated.

We disagree. First, the report does not state how or why Peine left the Group. Second, the report does not misstate the facts of his termination or his administrative leave with pay. "Suspended" is defined as "to bar temporarily from a privilege, office, or function;" while "leave" is defined as "authorized absence from duty." *The Merriam-Webster Dictionary New Edition* (2004). In this context, then, being "suspended" does not imply anything materially different from being

15

placed on "paid leave." Accordingly, the report does not support an inference that the stated reason for Peine's termination was false.

### 4. Peine's expert's testimony did not create a fact issue that he was terminated solely for refusing to commit an illegal act.

Peine next cites to the deposition testimony of his retained "governance compliance expert," Donna Boehme. According to Peine, Boehme's testimony created a fact issue because she testified that this case "presented a textbook case of retaliation." Boehme did not, however, render an opinion on whether Peine's disclosure to the reporter constituted a breach of his confidentiality obligations to his employer, or on what role this disclosure may or may not have had in his termination. Because Boehme did not exclude breach of Peine's confidentiality obligations as a reason for his termination, her testimony does not generate a material issue of fact on the sole-cause element of Peine's *Sabine Pilot* cause of action. *See Hinds*, 904 S.W.2d at 633 ("An employer who discharges an employee both for refusing to perform an illegal act *and* for a legitimate reason or reasons cannot be liable for wrongful discharge.").

### 5. Peine's co-workers' experiences after his termination do not create a fact issue on Peine's Sabine Pilot cause of action.

In his appellate briefing, Peine recounts the experience of Patricia Solis, a staff accountant he had hired at HIT Services, following his termination. Specifically, Peine points out that Solis had to respond to rumors that he had been fired for "cooking the books at HIT Services," and that Solis was "relieved of a fully functional workstation and computer for performing her job." Without further explanation, Peine asserts that these episodes support an inference that he was terminated for refusing to perform an illegal act. But Peine does not explain how these seemingly disconnected events—a third party responding to rumors and losing a desk and computer—can support an inference that he was terminated for

16

refusing to perform an illegal act. Without more, these events offer no support for Peine's *Sabine Pilot* cause of action. *See Suarez*, 465 S.W.3d at 634 ("An inference is not reasonable if it is premised on mere suspicion . . . .").

### 6. Temporal proximity does not support an inference that the sole cause of Peine's termination was his refusal to perform an illegal act.

Peine next asserts that the temporal proximity between his refusal to perform an illegal act and his termination supports an inference that he was fired in violation of *Sabine Pilot*. Peine alleges that he refused to follow Kumar's orders to falsify HIT Services' financial books in December 2008 and that he started reporting, and then continued to report, Kumar's attempted accounting wrongdoings through July 2009. Peine then argues that because he was terminated six weeks later, temporal proximity supports an inference that he was fired for refusing to perform an illegal act. Even assuming that temporal proximity could, in some cases, create a fact issue on the sole-cause element of a *Sabine Pilot* claim, we disagree that the evidence on which Peine relies does so in this case. *Cf. Safeshred*, 365 S.W.3d at 664 ("[T]he nature of a *Sabine Pilot* claim means that the illegal activity an employee is asked to do never actually occurs (because the employee will have refused to do it and been fired)."); *Marx v. Electronic Data Sys. Corp.*, 418 S.W.3d 626, 635 (Tex. App.—Amarillo 2009, no pet.) ("[E]ven under the *but for* causation standard applicable to Title VII retaliation cases, the mere temporal proximity between protected conduct and adverse action is insufficient to show a causal link.").

As explained above, reporting allegedly illegal acts is not protected by *Sabine Pilot*. *Winters*, 795 S.W.2d at 724–25 (rejecting request to extend *Sabine Pilot* cause of action to private at-will employees who are discharged for reporting illegal activities). Because Peine contends that he made only a single refusal in

17

December 2008, approximately eight months before he was terminated, the timing of his termination does not support an inference that he was fired solely as a result of his refusal to commit an illegal act. *See Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 523 (Tex. App.—Houston [1st Dist.] 2006, pet denied) (concluding, in workers' compensation retaliation case, that four-month gap between filing of compensation claim and termination did not support causal link between the two).

Peine attempts to shorten this gap between his refusal to commit an illegal act and his termination by citing to *Hawthorne v. Star Enterprise, Inc.*, 45 S.W.3d 757, 761–62 (Tex. App.—Texarkana 2001, pet. denied). In *Hawthorne*, the employer issued a standing order to employees that they physically smell water samples to determine whether hazardous materials had been removed. *Id.* at 758. Hawthorne refused the order, directed his subordinates not to comply with it, and then reported the order to the Occupational Safety and Health Administration. Hawthorne was then terminated by the employer. *Id.* at 759. The trial court granted the employer's motion for summary judgment based on Hawthorne's testimony that he was fired not only for refusing to commit an illegal act, but also for reporting the order to OSHA. *Id.* The court of appeals reversed the summary judgment, concluding that Hawthorne's report of the illegal order was not a separate act but instead was a continuation of his initial refusal. *Id.* at 761. Peine makes the same argument here: that his reports of Kumar's order to falsify HIT Services' financial records were a continuation of his initial refusal to perform an illegal act.

We initially note that *Hawthorne* is not binding on this Court and also that no other appellate court has cited *Hawthorne* for the proposition that a *Sabine Pilot* refusal to commit an illegal act can be continued over time by reporting the order to perform an illegal act to governmental authorities. We need not decide today

18

whether to follow *Hawthorne*, however, because it is distinguishable. First, unlike in *Hawthorne*, there is no evidence here that Peine continued to refuse to follow an order to perform any illegal act. Instead, the record reflects that Peine's superiors accommodated his demands. Second, the manager involved in Hawthorne's termination testified during his deposition that he was not aware that Hawthorne had made a report to OSHA at the time the decision was made to fire him. This admission alone created a fact issue on whether Hawthorne was terminated solely as a result of his refusal to perform an illegal act. *Id.* at 762. Because there is no similar testimony here, *Hawthorne* does not support Peine's effort to shorten the time gap between his refusal to falsify HIT Services' financial records and his termination.

Finally, Peine makes several public policy arguments that he was justified in reporting Kumar's order to falsify HIT Services' financial records to company management and the press, and he contends these policies in favor of reporting illegal activity served to continue his initial refusal. The Supreme Court of Texas has previously addressed this issue, and it has consistently rejected every attempt to extend the *Sabine Pilot* exception and recognize a common-law cause of action for retaliatory discharge of an employee who reports illegal activities in a private workplace. *Austin v. HealthTrust, Inc.*, 967 S.W.2d 400, 400 (Tex. 1998) ("Because the Legislature has been so proactive in promulgating statutes that prohibit retaliation against whistleblowers in many areas of the private sector, we decline to recognize a common-law cause of action."); *id.* at 403 (rejecting public policy arguments to extend *Sabine Pilot* to reporting violations of the law because doing so "would in large part eviscerate the specific measures the Legislature has already adopted"); *Winters*, 795 S.W.2d at 724–25; *see also Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006) ("*Sabine Pilot* protects employees

who are asked to *commit* a crime, not those who are asked not to *report* one."). This Court has likewise rejected requests to extend *Sabine Pilot* to terminations based on reports or investigations of illegal activity, concluding such expansion should be left to the Supreme Court of Texas or the Legislature. *See Melendez v. Exxon Corp.*, 998 S.W.2d 266, 273 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Mayfield v. Lockheed Eng'g & Scis. Co.*, 970 S.W.2d 185, 187–88 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Because *Sabine Pilot* does not apply to reports of illegal activity, Peine's reports of Kumar's actions cannot continue his refusal to commit an illegal act. Accordingly, Peine has failed to identify evidence that creates a genuine issue of material fact regarding the element of his claim that he was terminated solely for refusing to perform an illegal act.

## CONCLUSION

Having addressed and rejected each argument raised in Peine's single issue on appeal, we overrule that issue and affirm the trial court's judgment.


/s/    J. Brett Busby
Justice


Panel consists of Justices Jamison, Busby, and Brown.