

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00125-CV

_____

IONE STAVRON & SERAFIM STEVEN STAVRON, Appellants

V.

SURETEC INSURANCE COMPANY, Appellee

On Appeal from Probate Court No. 1
Tarrant County, Texas
Trial Court No. 2013-PR00606-1-F

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellants are Ione and Serafim "Sam" Stavron, a mother and son who appeal a summary judgment granting attorney's fees in favor of appellee SureTec Insurance Company. The trial court awarded the attorney's fees under the theory that SureTec had incurred legal expenses as a surety for Sam, and the Stavrons had agreed to indemnify SureTec for such a loss. We hold that SureTec had an enforceable indemnity agreement (contrary to Ione's first issue), that this indemnity obligation did not terminate (contrary to Sam's first issue), and that the reasonable and necessary amount of attorney's fees was conclusively proven (contrary to the Stavrons' second issues). We therefore affirm.

## I.    BACKGROUND

When Steven Stavron died, his son Sam was appointed as temporary administrator of his estate. Sam retained an attorney, Louis Papaliodis, to handle the matter. As temporary administrator, Sam was required to post a bond. So, on March 7, 2013, he submitted to Southwest Bonding Company an application for bond number 3348561 in the amount of $50,000. Ione, who was Steven's ex-wife, also submitted an application to Southwest Bonding the same day. Ione's application likewise concerned bond number 3348561, and her application bore the handwritten notation "Co-signer" at the top.

The Stavrons' applications did not mention any surety company by name; instead, the applications asked for an unnamed "Surety" to issue a bond. On the back

of both applications was an identical indemnity agreement, by which the applicants promised to indemnify the Surety against all claims and damages that the Surety may incur in connection with the extension of surety credit. The same day that the Stavrons executed their applications and submitted them to Southwest Bonding, SureTec issued bond number 3348561 to Sam in the amount of $50,000.

However, Sam's handling of the estate went awry, and he was replaced as temporary administrator. The order releasing him as temporary administrator also provided "the sureties on his bond are hereby released."

Papaliodis was also replaced as the estate's attorney. Subsequently, Papaliodis made a claim against the estate. When his claim was rejected, he pursued litigation against the estate and SureTec. SureTec eventually prevailed, but it incurred legal fees in doing so. SureTec sought to recover its legal expenses from Ione and Sam, relying on the indemnity clause in the applications they signed. The Stavrons refused to indemnify SureTec, and SureTec filed this suit.

On June 25, 2018, SureTec filed a motion for summary judgment, arguing that as a matter of law, the indemnity clause entitled SureTec to recover its legal expenses from the Stavrons. Among the many exhibits attached to the motion was an affidavit from SureTec's attorney, Gregory Weinstein, who discussed his representation in general terms and averred that SureTec had incurred $41,177 in attorney's fees.

Two days before the summary judgment hearing, SureTec submitted a reply and a "supplemental" affidavit from Weinstein, along with detailed billing records covering

3

the entirety of the three-year litigation. The supplemental affidavit stated that SureTec had by that point incurred $47,289 in legal fees.

On January 23, 2019, the trial court granted summary judgment in favor of SureTec, awarding $47,289 in attorney's fees jointly and severally against Sam and Ione, among other relief. This appeal followed.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

## III. CONTRACT FORMATION AND JOINT AND SEVERAL LIABILITY

In her first issue, Ione contends that the trial court erred in summarily enforcing the indemnity clause against her because she never entered an enforceable agreement with SureTec. Ione argued that her application could have only been accepted as a separate contractual offer through the issuance of a bond *to her*; the issuance of a bond

4

to Sam, she contended, did not create a valid contract that would bind her to indemnify SureTec. We hold that SureTec proved as a matter of law that Ione formed a valid unilateral contract that obligated her to indemnify SureTec.

"A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor and a promisee." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009). A unilateral contract, on the other hand, is created by the promisor promising a benefit if the promisee performs. *Id.* "A unilateral contract occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance or forbearance." *Id.* A unilateral contract becomes enforceable when the promisee performs. *City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011). The classic example of a unilateral contract begins with the offer "I will pay you $50 if you paint my house." *Vanegas*, 302 S.W.3d at 303. "The offer to pay the individual to paint the house can be withdrawn at any point prior to performance." *Id.* "But once the individual accepts the offer by performing, the promise to pay the $50 becomes binding." *Id.*

In support of its argument that it had a binding contract with Ione, SureTec cites cases in which indemnity clauses contained within bond applications have been enforced as binding unilateral contracts. *See, e.g.*, *Lesikar v. Moon*, No. 14-16-00299-CV, 2017 WL 4930851, at *10 (Tex. App.—Houston [14th Dist.] Oct. 31, 2017, no pet.) (mem. op.) (upholding award of attorney's fees based on an indemnity provision contained in a bond application). For instance, the Dallas Court of Appeals has

5

considered a case in which a surety sought to hold a cosigner liable on the indemnity clause contained within the bond application he signed, just as SureTec seeks to hold Ione liable here as an ostensible cosigner of Sam's bond application. *Irvin v. Guarantee Co. of N. Am., U.S.A.*, No. 05-07-01230-CV, 2008 WL 2971806, at *1–2 (Tex. App.—Dallas Aug. 5, 2008, no pet.) (mem. op.). There, as here, the applicant and cosigner submitted the bond application to a third-party broker, and the broker relayed the offer to a surety of its choosing—the bond application did not mention a specific surety by name. *Id.* at *4. The *Irvin* court took it as given that after issuing the requested bond, the surety could enforce the application's indemnity clause against the cosigner as part of a binding contract. *See id. Irvin* would seem to be on point.

But Ione argues that *Irvin* is distinguishable based on the format of the bond application. In *Irvin*, the appellant cosigned the very same bond application that was signed by the principal on the bond. *Id.* at *1. Here, Ione signed what she describes as a wholly separate bond application; her signature does not appear on Sam's application. Ione argues that because her application was separate and independent from Sam's, it required a separate form of acceptance. According to Ione, her application could only be accepted through the issuance of a bond *to her*, not to Sam, and because SureTec never issued a bond in her name, her separate offer-by-application was never accepted. For multiple reasons, we disagree.

First, Ione's application was not a separate offer from Sam's. Rather, the two documents worked in tandem as part of the same offer. "It is the settled rule in this

6

State that written contracts executed in different instruments whereby a single transaction or purpose is consummated are to be taken and construed together as one contract." *U.S. Capital Invs., LLC v. Shahbazi*, No. 02-12-00417-CV, 2014 WL 1713464, at *8 (Tex. App.—Fort Worth May 1, 2014, no pet.) (mem. op.) (quoting *Veal v. Thomason*, 159 S.W.2d 472, 475 (Tex. 1942)). A court may determine, as a matter of law, that multiple documents comprise a single written contract. *Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). This rule is most often applied when the documents at issue refer to one another, were executed by related parties, were formed at the same time, address a common purpose, or share between them a necessary term that is missing from one document but not another. *See Amerisource Funding, Inc. v. GrandSouth Bank*, No. 4:15-CV-03569, 2017 WL 4479190, at *5 (S.D. Tex. Feb. 16, 2017) (citing, *inter alia*, *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984)). When these qualities are present, "instruments may be construed together or treated as one contract even though they are not between the same parties." *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981).

Ione's application and Sam's application share many qualities that warrant a unified reading of the two documents as part of a single contract. Both documents are bond applications to Southwest Bonding of Fort Worth, Texas, and both were executed by members of the Stavron family. The resulting documents share an identical format and terms; the very same indemnity clause appears on the back of both applications. Both documents state that they were executed for the purpose of inducing the surety

7

to issue the bond. Both applications requested the issuance of temporary administrator bond number "3348561" in the amount of "50k" for the estate of Steven Stavron. Like Sam's application, Ione's application was executed March 7, 2013. SureTec issued the requested bond—number 3348561—on the very same day. The only difference between the two, other than the applicant's respective biographical information, is the notation "Co-signer"[1] at the top of Ione's application—an apparent internal reference to Sam's application. In light of these many points of commonality—identical formatting, terms, and dates of execution and performance; a related set of parties; an internal reference linking the two together; and a common purpose—we determine as a matter of law that the two applications should be read together as part of the same offer. *See Fort Worth ISD*, 22 S.W.3d at 840.

The record also shows as a matter of law that SureTec accepted this joint offer through performance. Ione argues that SureTec could only accept the application by issuing a bond to her, not Sam. But this argument runs counter to the law concerning acceptance and the terms of her application. The offeror is the master of her offer, and

---

[1]On appeal, Ione questions the origin of this handwritten notation. However, in the trial court, Ione never denied the validity of the notation, and she may not do so for the first time on appeal. *See Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 522 n.2 (Tex. App.—Dallas 2011, pet. denied) (holding that a challenge to a handwritten notation on a contract was not grounds for reversing summary judgment because appellant did not raise it in the trial court); Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see also Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam) (describing the need to preserve objections to summary judgment evidence).

she has the power to insist that an acceptance be performed or communicated in a particular manner or at a particular time. *Koons v. Impact Sales & Mktg. Grp., Inc.*, No. 2-07-001-CV, 2007 WL 4292423, at *3 (Tex. App.—Fort Worth Dec. 6, 2007, no pet.) (mem. op.); *Lacquement v. Handy*, 876 S.W.2d 932, 935 (Tex. App.—Fort Worth 1994, no writ). "The aphorism 'the offeror is the master of his offer' reflects the power of the offeror to impose conditions on acceptance of an offer, specify the manner of acceptance, or withdraw the offer before the offeree has effectively exercised the power of acceptance." *Cantu v. Cent. Educ. Agency*, 884 S.W.2d 565, 566 (Tex. App.—Austin 1994, no writ). Ione, as the master of the offer, could in theory define the terms of acceptance as she saw fit. But Ione never specified that this "Surety" could only accept the offer by issuing a bond to her rather than Sam. Rather, the application stated that Ione's offer was made "to induce the Surety . . . to extend surety credit *in any manner*, included [sic] but not limited to providing or having provided requested Bond(s)."[2] [Emphasis added.] Her offer thus left the mode of acceptance open, permitting SureTec to accept the offer by issuing the requested bond to Sam.

By accepting the Stavrons' offer through performance, SureTec formed a binding unilateral contract. In this regard, a comparison to *City of Houston v. Williams* is instructive. *See* 353 S.W.3d at 138. There, the issue was whether the City of Houston

---

[2]To the same end, SureTec submitted an affidavit from its employee Danielle Ortiz, averring that Ione entered the indemnity agreement "as an inducement to SureTec to issue the Bond."

9

had formed an enforceable contract with its firefighters regarding employment benefits. *Id.* at 132. The firefighters contended that there was such a contract, arguing that two Houston ordinances, which set the terms by which "eligible employees" would accrue benefits, gave rise to an enforceable contract. *Id.* at 132, 138. The supreme court agreed. *Id.* at 138. As the supreme court explained, the two ordinances jointly set the terms of a single offer (a promise of certain employment benefits) made to a generically named class of offerees ("eligible employees") that the offeree-firefighters could accept by performing as employees, thus forming a unilateral contract. *Id.* Similarly, here, twin applications combined to form a single offer, which the generically named offeree— the "Surety"—accepted by performing, thus forming a unilateral contract. We therefore hold that the summary judgment record conclusively establishes a contract formation as to Ione. *See MMP*, 710 S.W.2d at 60. Her argument to the contrary is without merit.

Also within her first issue, Ione contends that even if she was, as a matter of law, a cosigner of an accepted application, this would make her merely a guarantor of the resulting obligation, and her liability would not be joint and several. Ione says that as a guarantor, she could be called upon to indemnify SureTec only if Sam first failed to perform.

But Ione was not a guarantor; she was a cosigner who accepted the same indemnity obligations as Sam. When two cosigners promise the same performance to the same promisee, joint and several liability usually arises unless a contrary intention is

10

apparent in the language of the instrument. *AFD Fund v. Hinton, Inc.*, No. Civ.A. 302CV2417L, 2004 WL 2296983, at *4 (N.D. Tex. Oct. 13, 2004) (order) (quoting *Pitman v. Lightfoot*, 937 S.W.2d 496, 528 (Tex. App.—San Antonio 1996, writ denied)); *Trinity Universal Ins. Co. v. Drake*, 587 S.W.2d 458, 465 (Tex. App.—Dallas 1979), *aff'd in part, rev'd in part on other grounds*, 600 S.W.2d 768 (Tex. 1980). The application here does not show a contrary intention, and therefore Ione's liability is presumed to be joint and several.

Ione's arguments concerning liability are unavailing. We therefore overrule her first issue.

## IV.    NO TERMINATION OF INDEMNITY OBLIGATION

In his first issue, Sam submits that his indemnity obligations terminated when the trial court released the bond, and the trial court therefore erred when it held him liable for damages that were incurred after his obligations ceased. Sam's reasoning proceeds as follows: on October 13, 2014, the probate court rendered an order discharging Sam as temporary administrator and pronouncing "the sureties on his bond are hereby released"; Sam argues that this order effectively released his obligation to indemnify SureTec; it was only after this release, on November 14, 2014, that Papaliodis filed a claim against the estate and SureTec began to incur legal expenses; thus, because SureTec's damages were incurred after Sam's indemnity obligations ended, Sam reasons that he is not liable for SureTec's damages.

11

If the order did not release Sam's indemnity obligations, though, the predicate for his argument fails. It is well settled that in general, "[t]he release of the surety does not discharge the principal." *Bridges v. Phillips*, 17 Tex. 128, 130 (1856). "[T]he liability of the principal is made neither more nor less by the release of the surety . . . ." *McIlhenny Co. v. Blum*, 4 S.W. 367, 368 (Tex. 1887). Under general principles of law, Sam, as the principal, would not be released simply because SureTec was.

The only remaining question, then, is whether there is some unusual feature in the language of the trial court's order that releases Sam's indemnity obligations. To answer this question, we interpret the trial court's order. We construe orders under the same rules of interpretation as those applied to other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (orig. proceeding); *In re G.G.*, No. 02-16-00251-CV, 2017 WL 2807399, at *2 (Tex. App.—Fort Worth June 29, 2017, no pet.) (mem. op.). If an order is unambiguous, it must be construed according to the literal meaning of the language used. *G.G.*, 2017 WL 2807399, at *2.

As we read it, the trial court's order had no effect on Sam's indemnity obligation. In relevant part, the order provided, "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that SERAFIM 'SAM' STAVRON is relieved from any further duties as Temporary Administrator of the Estate of STEVEN STAVRON, and the sureties on his bond are hereby released." The order certainly discharged Sam as temporary administrator. The order also released SureTec as a surety. However, the

12

order said nothing of the separate contract by which the principal Sam had arranged for SureTec to issue the bond nor the indemnity obligations that the contract entailed.

Because Sam's indemnity obligations were not released by the trial court's order, his argument concerning the timing of that release and SureTec's damages must fail. We overrule his first issue.

## V. EVIDENCE OF ATTORNEY'S FEES

Ione and Sam raise the same argument as their second issues: they contend that SureTec failed to conclusively prove that $47,289 was the reasonable and necessary amount of its attorney's fees, and the trial court's award of that sum is therefore unsustainable. According to the Stavrons, SureTec's initial affidavit from Weinstein was fatally vague and claimed a different amount of attorney's fees—$41,177—than the trial court's award. The Stavrons concede that in a subsequent reply, SureTec submitted a supplemental affidavit and billing records thoroughly documenting $47,289 in fees. But the Stavrons contend that this supplemental evidence was untimely under our summary judgment rules and, therefore, also incapable of supporting the award.

We agree that the generalities stated in Weinstein's initial affidavit do not support the trial court's award. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019). This requires us to consider whether Weinstein's supplemental affidavit and the billing records were properly before the court and, if so, whether they were enough to carry SureTec's summary judgment burden.

13

At the outset, the question is whether the trial court's order granted SureTec leave to file its supplemental evidence late. Texas Rule of Civil Procedure 166a(c) provides, "Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing." Tex. R. Civ. P. 166a(c). "Summary judgment evidence may be filed late, but only with leave of court." *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). Where nothing appears in the record to indicate that the trial court granted leave to file the summary judgment response late, we presume that the trial court did not consider the response. *Id.* Leave to late file summary judgment evidence may be reflected in a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing. *Alphaville Ventures, Inc. v. First Bank*, 429 S.W.3d 150, 154 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We will deem leave to have been granted as long as the trial judge "affirmatively indicates in the record that he accepted or *considered*" the late-filed evidence. *Poonjani v. Kamaluddin*, No. 02-14-00193-CV, 2015 WL 3523102, at *3 n.6 (Tex. App.—Fort Worth June 4, 2015, no pet.) (mem. op.) (emphasis added) (quoting *Stephens v. Dolcefino*, 126 S.W.3d 120, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (op. on reh'g)); *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Seim v. Allstate Tex. Lloyds*, No. 02-16-00050-CV, 2017 WL 1738028, at *5 (Tex. App.—Fort Worth May 4, 2017) (en banc) (mem. op.), *rev'd on other grounds*, 551 S.W.3d 161 (Tex. 2018).

The summary judgment order makes clear that the trial court considered, and thus gave leave to file, the supplemental evidence attached to SureTec's reply. The order recites, "After *considering* the Motion, the responses filed by Serafim and Ione Stavron, and the *replies* thereto filed by SureTec Insurance Company, the Court finds that SureTec's Motion should be **GRANTED** in its entirety." [Italics added.] If the trial court considered SureTec's late-filed reply, it considered the late-filed evidence that was attached to the reply. "Courts of appeals have found that late-filed summary judgment evidence was considered by a trial court when . . . an order granting summary judgment stated that it had considered the response" to which that evidence was attached. *Foussadier v. Triple B Servs., LLP*, No. 01-18-00106-CV, 2019 WL 2127604, at *4 & n.4 (Tex. App.—Houston [1st Dist.] May 16, 2019, pet. filed) (mem. op.) (citing *Adi v. Rapid Bail Bonding Co.*, No. 01-08-00290-CV, 2010 WL 547474, at *3 n.6 (Tex. App.—Houston [1st Dist.] Feb. 18, 2010, no pet.) (mem. op.)). The inference that the trial court considered this supplemental evidence is only strengthened by the nature of the court's award: the order granted attorney's fees of $47,289—a number that appeared only in Weinstein's supplemental affidavit and the attached billing records. We are unwilling to believe that the court arrived at this figure through judicial imagination. Rather, the only natural reading of the order is that the trial court considered and relied on this supplemental evidence to arrive at its judgment. By considering this evidence, the court impliedly gave leave to file it late. *See Poonjani*, 2015

WL 3523102, at *3 n.6. Therefore, we are free to examine this evidence in determining whether SureTec mounted conclusive proof of its reasonable and necessary fees.

When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees. *Rohrmoos*, 578 S.W.3d at 484. The starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts. *Id.* at 498. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process. *Id.* Contemporaneous billing records, though not required, are nevertheless strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested. *Id.* at 502.

SureTec's supplemental evidence thoroughly addressed all of the points required by *Rohrmoos*. In his supplemental affidavit, Weinstein declared that he had practiced law in Texas since 1992, and he was also licensed in Arkansas and Oklahoma. The majority of his practice, he said, was devoted to trial, mediation, and arbitration of "probate surety" claims and other related matters. Weinstein testified that he was familiar with

16

handling probate bond litigation and the usual, customary, and reasonable fees charged by attorneys for this type of case in Tarrant County. Weinstein continued, "My current billing rate is comparable to those charged by other attorneys who have similar education, training, and experience."

Weinstein asserted that SureTec had incurred fees of $47,289 over the course of the suit. Weinstein explained that this fee represented the reasonable and necessary charge for 229.2 hours of legal services by the firm's attorneys and paralegals. According to the affidavit, the fee accounted for a variety of services, including investigation and defense of Papaliodis's claim, preparation of various filings, calls and correspondence with the client, legal research, file review, and "numerous other matters." Weinstein's uncontroverted supplemental affidavit is clear, positive, direct, free from internal contradiction, and could have been readily controverted. *See* Tex. R. Civ. P. 166a(c).

Attached to the supplemental affidavit were twenty-six pages of billing records detailing the particular services that Weinstein and his firm had rendered over the three-year span of the litigation. The invoices began with entries from March 20, 2015, in which Weinstein documented his initial "[a]nalysis and case strategy," the substance of which was redacted, a task taking .9 hours at $285 per hour; and from March 25, 2015, a paralegal's "[a]nalysis regarding case file materials and pleadings filed in Tarrant County Probate Court to assist attorney in drafting Original Answer, Verified Denial, Affirmative Defenses and Special Exceptions" and the paralegal's "attention to

17

obtaining file-stamped copies of pleadings filed in the Tarrant County Probate Court and attention to case strategy and plan of action for same," tasks that together took 1.3 hours to complete at $125 per hour. The records concluded with a notation from December 19, 2018, in which Weinstein documented his "[w]ork on replies in support of the Surety's Motion for Summary Judgment (1.4)" and "work on Supplemental Affidavit of Gregory M. Weinstein in support of Surety's Motion for Summary Judgment (0.6)" at a rate of $295 per hour. Between March 2015 and December 2018, there were nearly 250 similar entries documenting the other tasks that made up the representation as well as the reasonable rate and time for each one. *See Rohrmoos*, 578 S.W.3d at 484.

Taken together, the supplemental affidavit and billing records supply conclusive proof of the lodestar essentials described in *Rohrmoos*. *See id.* at 498. In light of Weinstein's methodical overview of his credentials and the reasonable and necessary dimensions of the representation, as well as the detailed billing records concerning the particulars of the services rendered, we conclude that this evidence is sufficient to support summary judgment. *See MMP*, 710 S.W.2d at 60; *Fuhrmann v. C & J Gray Invs. Partners, Ltd.*, No. 05-18-00683-CV, 2019 WL 3798181, at *5–6 (Tex. App.—Dallas Aug. 13, 2019, no pet. h.) (mem. op.) (concluding that a thorough attorney affidavit and contemporaneous billing records were sufficient to support summary judgment award of attorney's fees under *Rohrmoos*).

Briefly, Sam also argues that internal inconsistencies within the argument portion of SureTec's motion should preclude summary judgment. For example, at one point in

its motion, SureTec argues that it should be entitled to $33,768.75 in attorney's fees, costs, and expenses. In the next paragraph, however, SureTec prays for a different amount of total relief, $44,928.42. Sam argues that argument-disparities of this sort create a fact issue.

However, as we have made clear in the past, summary judgment arguments are not evidence. *Hurdsman v. Mayo*, No. 02-17-00099-CV, 2018 WL 3060116, at *4 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op.); *Green v. Brantley*, 11 S.W.3d 259, 264 (Tex. App.—Fort Worth 1999, pet. denied). These discrepancies do not affect the balance of the evidence or give birth to a fact issue when one would not otherwise exist. *See Peine v. HIT Servs. LP*, 479 S.W.3d 445, 453 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (concluding that argument, by itself and without record support, did not create a fact issue that would disturb the otherwise conclusive evidence). Despite these inconsistencies, then, the supplemental evidence nonetheless conclusively supports the $47,289 award. We remain convinced that summary judgment was proper. The Stavrons' second issues are overruled.

## VI. CONCLUSION

We affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: December 12, 2019

19