# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00233-CV

Armando Avila, Appellant

v.

United Parcel Service, Inc., Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-14-000743, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N[1]

Armando Avila, acting pro se, appeals from the trial court's summary judgment in favor of United Parcel Service, Inc. (UPS). After UPS terminated Avila's employment, Avila sued UPS alleging disability discrimination, failure to accommodate, and retaliation under the Texas Commission on Human Rights Act (TCHRA or Chapter 21).[2] *See* Tex. Lab. Code §§ 21.051 (prohibiting, in relevant part, discrimination by employer on basis of disability), .055 (prohibiting,

---

[1] Notice of appeal for this case was originally filed in this Court in September 2016, at which time the case was transferred to the El Paso Court of Appeals in compliance with a docket-equalization order issued by the Texas Supreme Court. On April 12, 2018, the Texas Supreme Court ordered that certain cases be transferred back to this Court from the El Paso Court, and we consider this appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018).

[2] In 2004, the Texas Commission on Human Rights (TCHR) was replaced with the Texas Workforce Commission civil rights division (TWC). *See* Tex. Lab. Code § 21.0015. Nonetheless, courts continue to refer to chapter 21 as the Texas Commission on Human Rights Act or TCHRA. *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 502 n.1 (Tex. 2012). We likewise refer to chapter 21 as the TCHRA.

in relevant part, retaliation against person who files charge or complaint), .128(a) (requiring that employer make reasonable accommodation for employee's disability). Avila also alleged wrongful discharge and retaliation under the Texas Workers' Compensation Act (TWCA). *See id.* § 451.001 (prohibiting, in relevant part, discharge of employee for filing good faith workers' compensation claim). For the reasons that follow, we affirm the trial court's summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Avila was employed by UPS from 1991 through March 26, 2012, and at the time of the events relevant to this appeal, was a package car driver. He was an hourly, full-time union employee subject to the collective bargaining agreement (CBA) between UPS and the International Brotherhood of Teamsters (IBT). On May 14, 2010, Avila was cited for driving while intoxicated (DWI) while driving his personal vehicle after work hours. Avila reported his DWI to his supervisor, Charles Holmes, who instructed him to report it to Holmes's supervisor, Cliff Robertson. In compliance with Article 16, section 3.3 of the CBA, Robertson informed Avila that he must enroll in UPS's Substance Abuse Program (SAP).[3] Avila completed an alcohol assessment with a SAP

---

[3] Article 16, section 3.3 provides, in relevant part:

When an employee, in any job classification requiring driving, has lost his/her license for driving under the influence of alcohol or a controlled substance he/she will be offered available inside work of one (1) full-time or two (2) part-time openings, not to exceed one (1) year provided that the employee is assessed by a Substance Abuse Professional (SAP) and is released to return to work by the SAP. The SAP shall establish the terms upon which the employee may return to work. The employee must also enter a rehabilitation program, if required by the SAP, within one (1) month of the SAP's assessment. The employee shall be returned to driving once he/she successfully completes the rehabilitation program, provided his/her driving privileges have been restored. The employee shall receive the appropriate rate of pay for the job performed based on his/her seniority. . . .

counselor and on May 21, 2010, signed an UPS/IBT Alcohol and/or Drug Rehabilitation Agreement (SAP Agreement) in which Avila agreed to participate in a rehabilitation program as a condition of his continued employment. On May 27, 2010, Avila entered an outpatient treatment program at Shoal Creek Hospital in Austin. One month later, Avila returned to work and, in accordance with Article 16, section 3.3 of the CBA, was reassigned to a warehouse position until he successfully completed the outpatient program. On July 9, 2010, Avila again signed a SAP Agreement to denote his successful completion of outpatient treatment and was permitted to return to driving.

At the time of his arrest for DWI, Avila's driver's license was removed from his possession, and he was given a temporary driving permit, which was valid for 40 days or, if Avila requested a hearing, until an administrative law judge (ALJ) issued a ruling. Avila requested a hearing, and based on his understanding that the temporary driving permit remained in effect and that his driver's license would not be suspended until a ruling by the ALJ, Avila did not inform UPS that his driver's license had been suspended. The suspension was upheld, and on September 8, 2010, Avila filed a petition in Williamson county court seeking an occupational driver's license.[4] Avila obtained an order granting him an occupational license that allowed him to drive restricted hours of 8:30 a.m. to 8:30 p.m. subject to certain conditions, including that he install an ignition interlock device "*on any and all vehicles*" that he operated.[5] Both Avila's petition and the order granting

---

[4] *See* Tex. Transp. Code § 521.242 (providing, in relevant part, that eligible person whose license has been suspended may apply for occupational license by filing verified petition with clerk of county court in county in which person resides). In the petition, Avila stated that he was a resident of Williamson County.

[5] *See id.* §§ 521.244(a) (providing that judge who hears petition shall sign order finding whether essential need for occupational license exists); .246(a) (providing that if license was suspended after conviction of DWI, judge shall restrict person to operation of vehicle equipped with ignition interlock device).

Avila an occupational license stated that his driver's license had been suspended effective May 14, 2010, the date of the DWI arrest.

In March 2011, after running a routine annual motor vehicle records check, UPS learned that Avila's driver's license was suspended and had been since his DWI arrest ten months earlier. On March 18, 2011, Robertson again removed Avila from his driver duties and offered him an inside, non-driving position, which Avila accepted. In accordance with Article 16, section 3.3 of the CBA, Avila's hourly pay was reduced from his driver wage of $30.39 to $25.83, the level UPS determined appropriate for the new position considering Avila's seniority level. Avila presented his occupational license to Robertson and also obtained a letter from his attorney stating that section 521.246 of the Texas Transportation Code provided an exception to the required use of the ignition interlock device for use of a vehicle for employment.[6] UPS did not agree and did not allow Avila to return to driving duty.

---

[6] Section 521.246 provides, in relevant part:

(e) A person to whom this section applies may operate a motor vehicle without the installation of an approved ignition interlock device if:

(1) the person is required to operate a motor vehicle in the course and scope of the person's employment;
(2) the vehicle is owned by the person's employer;
(3) the employer is not owned or controlled by the person whose driving privilege is restricted;
(4) the employer is notified of the driving privilege restriction; and
(5) proof of that notification is with the vehicle.

Tex. Transp. Code § 521.246.

4

On March 31, 2011, Avila filed a grievance in which he alleged that UPS had improperly removed him from driver duties and demanded that he be reinstated to his driver position. In September 2011, Avila filed a second grievance alleging that the reduction in his hourly pay violated the Americans with Disabilities Act (ADA) because he was participating in the SAP program and demanding reinstatement to his driver position with full-time driver pay. After the grievances could not be resolved at a local hearing, pursuant to Article 51 of the CBA, they were submitted to a grievance committee composed of three union representatives and three UPS representatives. In December 2011, the grievance committee determined that UPS had complied with Article 16 of the CBA in reassigning Avila and adjusting his pay. The grievance committee also instructed Avila to seek clarification with the court that issued his occupational license as to whether he was required to use an ignition interlock device on UPS-owned vehicles, as the broad, italicized language of the order stated. Avila never sought such clarification.

In January 2012, Avila filed a charge of discrimination with the EEOC alleging violations of Title VII of the Civil Rights Act and the ADA. UPS was notified of the charge in January 2012 and responded. In its Right to Sue Notice to Avila, the EEOC stated that it was "unable to conclude that the information obtained establishe[d] violations of the statutes." On March 12, 2012, while working in the warehouse, Avila sustained an injury after falling on a spilled substance. Avila reported the injury and was instructed to complete a first report of injury form and seek medical treatment. Avila completed the form and was subsequently escorted to a doctor by a UPS supervisor. He was released to return to work with restrictions, returned to work the next day, and was assigned to a light duty position. On March 13, 2012, Robertson met with Avila to remind

5

him that Avila had until March 19, 2012 to have his driving privileges reinstated under the terms of the CBA, which limited reassignment for the loss of a license for DWI to one-year. A letter from UPS to Avila memorializing the meeting explained that failure to provide UPS with appropriate documentation of a current driver's license allowing Avila to return to a driver position would be considered an unauthorized leave of absence and would result in his removal from the "Seniority List," or termination. Avila filed a formal complaint with the Occupational Safety and Health Administration (OSHA) alleging that UPS did not "respond promptly to reports of spills on the floor," and on March 26, 2012, UPS sent a response to OSHA.[7] In March 2012, Avila also mailed a letter, addressed to "To Whom It May Concern," to the "UPS District Occ. Health Sup." in San Antonio requesting "the proper forms . . . to apply for a special accommodation in accordance with the [ADA]."

Avila did not submit any new information indicating that he had an unrestricted driver's license or clarifying the requirement for the ignition interlock device with regard to UPS-owned vehicles. UPS Labor Relations Manager Cheryl McKirnan made the decision to terminate Avila's employment, and on March 26, 2012, Avila was given an official notice of discharge. Avila filed a grievance over his discharge. As with his previous grievances, there was no resolution at the local hearing, and the grievance was sent to the grievance committee. The grievance committee deadlocked over whether Avila should be discharged. In accordance with

---

[7] In August 2012, OSHA notified Avila that it had found no reasonable cause to believe UPS had violated the Occupational Safety and Health Act.

Article 51 of the CBA, the grievance was submitted to a "Deadlock Panel," which denied the grievance in May 2012.

Avila filed suit in March 2014, alleging disability discrimination, failure to accommodate, and retaliation under Chapter 21. *See* Tex. Lab. Code §§ 21.051, .055, .128. Avila also alleged wrongful discharge and retaliation under section 451.001 of the Labor Code. *See id.* § 451.001. UPS filed a "Traditional and No-Evidence Motion for Summary Judgment," arguing that Avila's claims were preempted by section 301 of the Labor Relations Management Act and that there was no evidence to support Avila's discrimination, failure to accommodate, and retaliation claims.[8] Avila filed a response, UPS filed a reply with additional evidence, and Avila filed an amended response. After a hearing the trial court granted the motion for summary judgment on two grounds: (1) that Avila's discrimination and retaliation claims were preempted by Section 301 of the Labor Management Relations Act and (2) that there was no evidence to support Avila's Chapter 21 discrimination and retaliation claims or his retaliation claim under section 451.001. This appeal followed.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review summary judgments de novo. *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). We review the evidence presented by the motion and response

---

[8] Although UPS initially argued that there was no evidence of Avila's discrimination, failure to accommodate, and retaliation claims, it attached evidence to its motion and reply, arguing in essence that its evidence showed that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Thus, UPS's motion was in substance a traditional motion for summary judgment, and we will treat it as such.

in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When the movant satisfies this initial summary judgment burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See* Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517 (Tex. 2014).

"Discrimination and retaliation cases under the TCHRA can be established with either direct or circumstantial evidence." *Hartranft v. University of Tex. Health Sci. Ctr.-Hous.*, No. 01-16-01014-CV, 2018 Tex. App. LEXIS 4679, at *30, (Tex. App.—Houston [1st Dist.] June 26, 2018, no pet.) (mem. op.) (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018)). As the Texas Supreme Court has explained, the U.S. Supreme Court recognizes two alternative methods of proof in discrimination cases. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The first method involves proof of discriminatory intent through direct evidence. *Id.* However, because motives are often "more covert than overt," making direct evidence of animus difficult to identify, the U.S. Supreme Court created the burden-shifting mechanism of *McDonnell Douglas*. *Id.* Thus, in employment discrimination and retaliation cases that have not been fully tried on the merits, such as the summary judgment case before us, we apply the burden-shifting analysis established by the U.S. Supreme Court in *McDonnell Douglas*

8

*Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Alamo Heights*, 544 S.W.3d at 781–82 (explaining that *McDonnell Douglas* burden-shifting analysis applies to discrimination and retaliation claims); *Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 437–39 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (applying burden-shifting analysis to discrimination claim); *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 68–69 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (same as to retaliation claim); *cf. Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam) (explaining that when case has been tried on merits, appellate courts do not engage in burden-shifting analysis). The *McDonnell Douglas* burden-shifting framework is not applicable to a reasonable accommodation claim. *Donaldson*, 495 S.W.3d at 439; *Davis v. City of Grapevine*, 188 S.W.3d 748, 759 (Tex. App.—Fort Worth, 2006, pet. denied).

Under the *McDonnell Douglas* burden-shifting approach, the plaintiff has the initial burden to present a prima facie case of discrimination. *Davis*, 188 S.W.3d at 757. Although the plaintiff must plead facts that constitute a prima facie case of discrimination, the defendant may present evidence negating those facts. *Garcia*, 372 S.W.3d at 637; *Boson v. Manor Indep. Sch. Dist.*, No. 03-17-00464-CV, 2018 Tex. App. LEXIS 1629, at *6 (Tex. App.—Austin Mar. 1, 2018, no pet.) (mem. op.). If the defendant presents such evidence, the plaintiff must then present evidence in support of pleaded facts. *Garcia*, 372 S.W.3d at 637; *Boson*, 2018 Tex. App. LEXIS 1629, at *6. "[A] 'prima facie case' has a traditional legal meaning. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding).

9

If the plaintiff meets his prima facie burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Adams v. Artco-Bell Corp.*, No. 03-08-00690-CV, 2010 Tex. App. LEXIS 2774, at *5–6 (Tex. App.—Austin Apr. 14, 2010, no pet.) (mem. op.); *Davis*, 188 S.W.3d at 757. If the employer demonstrates a legitimate, nondiscriminatory reason for its employment action, the plaintiff must create a material fact issue by showing that the employer's explanation is merely a pretext and that, notwithstanding the proffered reason, it engaged in intentional discrimination. *See Alamo Heights*, 544 S.W.3d at 764 & n.5 (applying *McDonnell Douglas* burden-shifting analysis in review of plea to jurisdiction); *Adams*, 2010 Tex. App. LEXIS 2774, at *4–6 (same in review of summary judgment); *Davis*, 188 S.W.3d at 757–58 (describing *McDonnell Douglas* burden-shifting analysis). At the summary judgment stage, the nonmovant employee need only point to the existence of a genuine issue of material fact. *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

## DISCUSSION

Because it is dispositive, we begin with Avila's second issue, in which he challenges the trial court's determination that there was no evidence to support his discrimination, accommodation, and retaliation claims. Avila contends that his alcoholism is a disability for purposes of the ADA and the TCHRA, that he is a qualified individual with a disability, that he requested reasonable accommodation, and that UPS failed to accommodate his disability and discriminated against him because of his disability by refusing to allow him to return to the higher paid position of driver and by subjecting him to different terms and conditions of employment from those applied to other employees. Avila also argues that he was terminated in retaliation for filing

10

an EEOC complaint and a workers' compensation claim. We address his discrimination, accommodation, and retaliation claims in turn.

**Disability Discrimination and Reasonable Accommodation**

The TCHRA prohibits discrimination based on disability, *see* Tex. Lab. Code § 21.051(1), and requires reasonable accommodation, *see id.* § 21.128. Because one of the primary goals of the TCHRA is to "provide for the execution of the policies of Title VII," *id.* § 21.001(1), we may look to analogous federal law as authority in interpreting the TCHRA, *Alamo Heights*, 544 S.W.3d at 764 n.5; *accord San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136–37 (Tex. 2015). Here, because another purpose of the TCHRA is to provide for the execution of the policies embodied in the ADA and its amendments, Tex. Lab. Code § 21.001(3), we may consider the ADA and interpretive case law, *Alamo Heights*, 544 S.W.3d at 764 n.5. Like the TCHRA, the ADA prohibits employers from discriminating against a "qualified individual on the basis of disability," 42 U.S.C. § 12112(a), and provides that discrimination includes failing to make "reasonable accommodations to the known . . . limitations of an otherwise qualified individual with a disability," *id.* § 12112(b)(5)(A).

The elements of a claim for disability discrimination under the TCHRA are that the plaintiff (1) has a "disability," (2) is "qualified" for the job, and (3) suffered an adverse employment decision "on account of" his disability. *Equal Emp't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (stating elements of ADA claim); *Carter v. Hegar*, No. 03-16-00706-CV, 2018 Tex. App. LEXIS 3758, at *6 (Tex. App.—Austin May 25, 2018, no pet.) (mem. op.) (same as to TCHRA). Similarly, the elements of a claim for failure to accommodate

11

a disability are that "(1) the plaintiff is a 'qualified individual with a disability,'" (2) "the disability and its consequential limitations were 'known' by his employer, and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. Louisiana Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (stating elements under ADA); *accord Texas Parks & Wildlife Dep't v. Gallacher*, No. 03-14-00079-CV, 2015 Tex. App. LEXIS 2024, at *14 (Tex. App.—Austin Mar. 4, 2015, no pet.) (mem. op.) (same under TCHRA); *see also* Tex. Lab. Code § 21.128 (requiring reasonable workplace accommodation for known physical or mental limitation of qualified individual with disability).

A qualified individual is one who can reasonably perform the essential functions of his employment position. *See* 42 U.S.C. § 12111(8); Tex. Lab. Code § 21.105 (providing that disability discrimination applies only to discrimination because of condition that does not impair individual's ability to reasonably perform job). Thus, to avoid summary judgment on the question of whether he is a qualified individual, a plaintiff must create a material fact issue as to whether (1) he could perform the essential functions of the job in spite of his disability or (2) a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job. *Crossley v. CSC Applied Techs., L.L.C.*, 569 Fed. Appx. 196, 198 (5th Cir. 2014); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996); *Hagood v. County of El Paso*, 408 S.W.3d 515, 525 (Tex. App.—El Paso 2013, no pet.).

A function is essential if it "bear[s] more than a marginal relationship to the job at issue." *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993); *accord Texas Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782, 790 (Tex. App.—Dallas 2014, pet. denied).

Evidence we consider in determining what functions of a job are essential includes the employer's judgment and any written job description. *See* 29 C.F.R. § 1630.2(n)(3)(i), (ii). "If the court concludes that the plaintiff is not able to perform the essential functions of the job, the court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions." *Department of Aging & Disability Servs. v. Comer*, No. 04-17-00224-CV, 2018 Tex. App. LEXIS 671, at *8 (Tex. App.—San Antonio Jan. 24, 2018, no pet.) (mem. op.) (quoting *Davis*, 188 S.W.3d at 766). "It is the plaintiff's burden 'to demonstrate, as part of his prima facie case, that an accommodation of his disability exists and that such accommodation is reasonable.'" *Id.* (quoting *Davis*, 188 S.W.3d at 763). "If no reasonable accommodation would enable the plaintiff to perform the essential functions of his position, then he is not a 'qualified individual' with a disability." *Id.* at *8–9 (quoting *Davis*, 188 S.W.3d at 766); *see Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997).

**Discrimination**

### *Avila's prima facie case*

The dispositive issue in determining Avila's discrimination claim is whether Avila raised a material fact issue as to whether he was qualified for the position of driver.[9] *See Carter*,

---

[9] UPS argues that Avila has waived the argument that his alcoholism is a disability by failing to raise it in the trial court. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). In his petition, Avila asserted that he entered a rehabilitation program "because of the alcoholism and disability from which he suffered" and that UPS had discriminated against him "through failure to reasonably accommodate Plaintiff's disability." In its motion for summary judgment, UPS concluded that "[a]lthough not explicitly stated in any of his pleadings, Avila presumably views his alcoholism as a disability." UPS did not specially except to Avila's alleged

2018 Tex. App. LEXIS 3758, at *6; *Adams*, 2010 Tex. App. LEXIS 2774, at *6 (noting "overlapping 'qualification' elements" of disability discrimination and reasonable accommodation claims). In his petition, Avila pleaded that after his DWI, he obtained an occupational license that allowed him to drive to, from, and during work, making him qualified to perform the essential functions of his job as a driver. However, UPS presented as summary judgment evidence a copy of the order granting Avila an occupational license, which stated that Avila's driver's license had been suspended on the date of his DWI arrest and required Avila to have an ignition interlock device "*on any and all vehicles*" he operated under the occupational license. This evidence negated that Avila's occupational license made him qualified to perform the functions of a UPS driver, requiring Avila to present evidence in support of his assertion that he was qualified. *See Garcia*, 372 S.W.3d at 637; *Boson*, 2018 Tex. App. LEXIS 1629, at *6. In his response, Avila offered a letter his attorney wrote citing section 521.246 of the Texas Transportation Code and explaining that section 521.246 provides an exception to the required use of the ignition interlock device for use of a vehicle for employment. Although the letter was addressed only to "To Whom It May Concern" and Avila offered no summary judgment evidence that the letter was mailed to UPS or that UPS ever received the letter, UPS has not denied receiving the letter. Construing the evidence in the light most

---

lack of specificity concerning his alleged disability and inferred from his assertions that he was referring to his alcoholism. Therefore, construing Avila's pleadings liberally, we conclude that he sufficiently alleged a prima facie case that he suffers from alcoholism as a disability in the absence of any negating evidence from UPS. *See Bos v. Smith*, ___ S.W.3d ___, No. 16-0341, 2018 Tex. LEXIS 524, at *23 (Tex. June 8, 2018) ("When, as here, no special exception is made, we liberally construe the pleadings in the pleader's favor."); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012) (stating that although plaintiff must plead prima facie case, defendant may present evidence to negate allegations).

favorable to Avila, we conclude that, unrebutted, Avila's evidence was sufficient to establish a prima facie case that Avila was qualified to perform the duties of driver for UPS. *See* 42 U.S.C. § 12111(8); Tex. Lab. Code § 21.105; *Lipsky*, 460 S.W.3d at 590 (explaining that prima facie case is evidence sufficient as matter of law to establish fact if not rebutted); *Garcia*, 372 S.W.3d at 637–38 (stating that plaintiff's burden of proof for prima facie case does not "involve a significant inquiry into the substance of the claims") (quoting *State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009)).

### *UPS's legitimate, nondiscriminatory reason*

Accordingly, the burden shifted to UPS to articulate a legitimate, nondiscriminatory reason for its differential treatment of Avila. *See Adams*, 2010 Tex. App. LEXIS 2774, at *5–6; *Davis*, 188 S.W.3d at 757. UPS presented evidence that possessing a valid driver's license was listed as an essential job function in the job description for a UPS driver position. *See* 29 C.F.R. § 1630.2(n)(3)(ii) (providing that evidence of whether function is essential includes written job description); *Chandler*, 2 F.3d at 1393 (explaining that function is essential if it bears more than marginal relationship to job). In his deposition testimony Avila agreed that UPS drivers need "appropriate licenses." UPS also offered the deposition testimony of Labor Relations Manager McKirnan that because of safety and liability concerns, UPS practice does not allow an employee returning to work following a SAP evaluation to drive unless he has a valid driver's license with no restrictions. *See* 29 C.F.R. § 1630.2(n)(3)(i) (providing that evidence of whether function is essential includes employer's judgment). McKirnan further testified that UPS policy does not allow ignition interlock devices to be placed on UPS vehicles and that it was not feasible to do so because UPS vehicles are shared by multiple drivers and drivers do not use the same vehicle every day.

15

Further, UPS's summary judgment evidence showed that in upholding Avila's reassignment to the warehouse, the grievance committee expressly instructed Avila to seek clarification from the court that granted the occupational license concerning whether Avila was required to install an ignition interlock device on UPS-owned vehicles, as indicated by the broad, italicized language of the order. The summary judgment evidence included Avila's deposition testimony, in which he stated that he did not seek clarification from the court and that even after his driver's license suspension ended in October 2012, he was required to use an ignition interlock device until October 2016 as a condition of his probation. UPS's summary judgment evidence thus negated that Avila was qualified to be a UPS driver and established a legitimate, nondiscriminatory reason for its refusal to return Avila to a driver position. *See LHC Group*, 773 F.3d at 698–99 (concluding that employee's inability to drive meant she was not "qualified" under ADA to work as field nurse, who was expected to spend large portion of day driving); *Crossley*, 569 Fed. Appx. at 199–200 (affirming summary judgment on ground employee was not "qualified individual" where she was unable to travel, which was essential function of job); *Turco*, 101 F.3d at 1093–94 (concluding that summary judgment evidence showed that employee was not qualified to perform essential functions of position, which included walking and climbing); *Adams*, 2010 Tex. App. LEXIS 2774, at *7–13 (reviewing summary judgment evidence and concluding that employer negated that employee could perform essential functions of job, which included walking and lifting).

### Avila's evidence of pretext

UPS's showing of a legitimate, nondiscriminatory reason for its refusal to return Avila to his driver position triggered Avila's duty to create a material fact issue as to his qualification

16

and whether UPS's reasons for its action were a pretext for discrimination. *See Alamo Heights*, 544 S.W.3d at 764 & n.5 (applying burden-shifting analysis in jurisdictional challenge to TCHRA claim); *M. D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam) (same in context of summary judgment). Avila argues on appeal that another employee, Mark Caka, was allowed to drive without an ignition interlock device even though he had an occupational license requiring that he use an ignition interlock device and that UPS denied Avila the same accommodation. As summary judgment evidence, Avila produced a letter from the Williamson County Adult Probation Department stating that if Caka's employer was aware of the requirement that he use an ignition interlock device and if proof of the employer's knowledge of this requirement was kept with Caka in the vehicle, then he was allowed to use a company vehicle without the ignition interlock device installed.

However, McKirnan testified that when determining whether to allow an employee to drive with an occupational license, UPS distinguishes between occupational licenses that require an ignition interlock device on all vehicles and occupational licenses that do not have such a requirement. She stated that it was only because of a management mistake that Caka had been allowed to drive for a brief period with an occupational license that required an ignition interlock device. McKirnan explained that Robertson had, without authority or authorization, signed a waiver form presented to him by Caka and that when the safety department discovered the mistake, Caka was immediately removed from his driving position, and, like Avila, placed in an inside, non-driving job. Thus, the record does not reflect that Avila was denied an accommodation provided to Caka. Moreover, unlike Caka, Avila did not provide UPS with clarification from the court concerning

17

application of the ignition interlock device requirement to UPS vehicles, as he was instructed to do by the grievance committee. On this summary judgment record, we conclude that Avila failed to create a material fact issue as to whether UPS's reasons for its actions were mere pretext and that the trial court did not err in granting UPS's motion for summary judgment on Avila's discrimination claim. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Donaldson*, 495 S.W.3d at 439 (holding that trial court did not err in granting summary judgment where plaintiff failed to raise fact issue regarding whether employer used plaintiff's job performance as pretext for disability discrimination). Accordingly, we overrule Avila's second issue as to his discrimination accommodation claim.

### Accommodation

Avila contends that he twice requested reasonable accommodation and UPS refused to provide any accommodation. He argues that once he presented a request for accommodation, UPS was required to engage in an "interactive process" to determine what reasonable accommodations might be available. *See* 29 C.F.R. 1630.2(o)(3) (providing that to determine appropriate reasonable accommodation, informal interactive process may be necessary); *Equal Emp't Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621–22 (5th Cir. 2009) (stating that once employee requests accommodation and suggests reasonable accommodations, employer must engage in interactive process). He also urges that he was not required to mention the ADA or use the phrase "reasonable accommodation." *See Chevron Phillips*, 570 F.3d at 621.

Avila presented as summary judgment evidence his September 2011 grievance, in which he complained of being reassigned from driving duties to warehouse duties. However, in that

18

grievance, Avila merely asserted that his reassignment violated the ADA because he was in the SAP program and requested that he be reinstated to his driver position. Avila did not state that accommodation was needed or request any adjustment in his working conditions—just that he return to his prior position. *See id.* (explaining that it is employee's responsibility to inform employer that he seeks accommodation, to explain that accommodation requested is for medical condition, and where disability is not open and obvious, to identify the disability and suggest reasonable accommodations); *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (concluding that employee's letter that did not mention disability or state need for specific accommodations did not constitute request for accommodation under ADA); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735–36 (5th Cir. 1999) (explaining that duty to launch interactive process and to provide concrete request for reasonable accommodation is on employee).

Avila also produced as evidence a letter he mailed in March 2012 to "UPS (c/o) Harlan Schulze" at a San Antonio address. Addressed to "To Whom It May Concern," the letter requested "the proper forms . . . to apply for special accommodation." However, there is no evidence that Schulze or any UPS supervisor with authority over Avila received the letter. More significantly, the letter does not identify Avila's disability or request any accommodation—it merely requests "the proper forms" so that Avila could *thereafter* "apply for a special accommodation." Thus, the letter to Schulze does not constitute a request for accommodation. *See Green v. Medco Health Sols. of Tex., LLC*, 947 F. Supp. 2d 712, 726 (N.D. Tex. 2013) (finding correspondence from plaintiff's counsel to employer indicating that plaintiff hoped parties could "begin discussions" to "determine a reasonable accommodation" insufficient as matter of law to constitute request for accommodation);

19

*see also Taylor*, 93 F.3d at 165 (stating that "indefinite and ambiguous" request did not constitute request for accommodation as matter of law).

We conclude that the summary judgment evidence established that Avila did not properly request reasonable accommodation and that alternatively UPS did not refuse to make any reasonable accommodation that would have enabled Avila to perform the essential duties of a UPS driver. The summary judgment evidence established that under his occupational license, Avila was restricted by court order to driving only vehicles with an ignition interlock device; that to allow Avila to drive without an ignition interlock device—in the face of an explicit court order and in the absence of any clarification to the contrary from the court—would violate UPS's safety and liability practices; and that it was not feasible to install an ignition interlock device on a UPS vehicle for Avila. The accommodation necessary would have violated UPS's safety and liability practices and put both Avila and UPS in jeopardy of violating a court order or caused UPS to make extraordinary arrangements to provide a vehicle for Avila's exclusive use. "This goes far beyond the 'reasonable accommodation' that might be required under the ADA or [the TCHRA]." *See Adams*, 2010 Tex. App. LEXIS 2774, at *13–14 (concluding that accommodation that caused employer to have two people performing one job was not reasonable); *see also Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) (noting that ADA does not require employer to create job category or adjust co-workers' duties for employee with disability); *Turco*, 101 F.3d at 1094 (concluding that where employee created safety risk for himself and others, he was not qualified for job and stating that law does not require "affirmative action in favor of individuals with disabilities" but "merely prohibits employment discrimination against qualified individuals with disabilities").

Finally, the summary judgment evidence showed that UPS did accommodate Avila by reassigning him to a non-driving position for a one-year period in accordance with the CBA. Neither the ADA nor the TCHRA requires more. *See* 29 C.F.R. § 1630.2(o)(2)(ii) (providing that reasonable accommodation may include reassignment to vacant position); Tex. Lab. Code § 21.128(c) (specifying that damages are not available if employer demonstrates good faith effort to supply reasonable workplace accommodation); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) (holding that ADA does not require employer to take action inconsistent with contractual rights of other workers under collective bargaining agreement). We conclude that the summary judgment evidence negated Avila's claim that UPS failed to make reasonable accommodation and that the trial court did not err in granting UPS's motion for summary judgment on Avila's accommodation claim. *See Tamez*, 206 S.W.3d at 582. Accordingly, we overrule Avila's second issue as to his reasonable accommodation claim.

**Retaliation**

In his second issue, Avila also argues that the trial court erred in granting UPS's motion for summary judgment on his retaliation claims under the TCHRA and the TWCA. *See* Tex. Lab. Code §§ 21.055, 451.001. The TCHRA prohibits retaliation against an employee who has engaged in certain protected activity, including filing a charge or complaint. *See id.* § 21.055(2)(3). The TWCA protects an employee from, in relevant part, retaliatory discharge for filing a worker's compensation claim in good faith. *See id.* § 451.001(1).

As with claims for discrimination, we apply a burden-shifting analysis to retaliation claims, but the evidentiary elements of the prima facie case differ from those of a discrimination

21

case because of the nature of the claims. *Alamo Heights*, 544 S.W.3d at 782; *Hartranft*, 2018 Tex. App. LEXIS 4679, at *30. To prevail in a retaliation action under the TCHRA, the plaintiff must establish a prima facie case showing that: (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App.—San Antonio 2011, no pet.); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A plaintiff asserting a TCHRA retaliation claim must establish that, in the absence of his protected activity, the employer's prohibited conduct would not have occurred when it did. *CSC*, 376 S.W.3d at 823; *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.). Thus, the plaintiff must establish a "but for" causal nexus between the protected activity and the prohibited conduct. *CSC*, 376 S.W.3d at 823; *Herbert*, 189 S.W.3d at 377. The plaintiff is not required to establish that the protected activity was the sole cause of the employer's prohibited conduct. *CSC*, 376 S.W.3d at 823; *Herbert*, 189 S.W.3d at 377. The elements of a retaliation claim under the TWCA are essentially the same. The plaintiff must prove that he engaged in activity protected under the act, that he was retaliated against for engaging in the protected activity, and that the employer's action would not have occurred when it did had the protected activity not occurred. *See* Tex. Lab. Code § 451.001; *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam).

A retaliation plaintiff generally may rely on circumstantial evidence to establish a causal link between the protected activity and the retaliatory action. *Kingsaire, Inc. v. Melendez*,

477 S.W.3d 309, 312 (Tex. 2015); *see Haggar*, 164 S.W.3d at 389. Circumstantial evidence of the causal link may include (1) temporal proximity of the termination to the date of injury or complaint; (2) knowledge of the claim by those making the decision on termination; (3) expression of a negative attitude towards the employee's injured condition; (4) failure to adhere to established company policies; (5) discriminatory treatment in comparison to similarly situated employees; and (6) evidence that the stated reason for the discharge was false. *Melendez*, 477 S.W.3d at 312; *Echostar Satellite L.L.C. v. Aguilar*, 394 S.W.3d 276, 287 (Tex. App.—El Paso 2012, pet. denied); *Parker*, 365 S.W.3d at 67. "[A]n employee's subjective beliefs of retaliation are merely conclusions and do not raise a fact issue precluding summary judgment in a retaliatory discharge claim." *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex. App.—Fort Worth 2006, no pet.) (citing *Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994)).

Avila asserts that UPS terminated him in retaliation for engaging in protected activity under section 21.055 of the TCHRA and section 451.001 of the TWCA. It is undisputed that Avila engaged in protected activity under both provisions—filing an EEOC complaint for purposes of the TCHRA and filing a workers' compensation claim for purposes of the TWCA. It is also undisputed that Avila's termination was an adverse employer action for purposes of both statutes. Therefore, the dispositive issue is whether Avila has shown the requisite causal connection between his protected activities and his termination. *See Haggar*, 164 S.W.3d at 388; *CSC*, 376 S.W.3d at 823.

### Avila's prima facie case

We begin with determining whether Avila established a prima facie case. The causal link required at the prima facie stage does not rise to the level of a "but for" standard. *Gee*, 289 F.3d

23

at 345 (citing *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)). "The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Alamo Heights*, 544 S.W.3d at 782. Temporal proximity alone can, in some instances, establish the prima facie causation element. *Strong v. University Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

Avila filed his EEOC complaint in January 2012, and UPS received notice on January 19, 2012. Avila was injured and filed a workers' compensation claim on March 12, 2012. On March 13, 2012, UPS reminded Avila that he had until March 19, 2012 to have his driving privileges reinstated and that failure to provide UPS with appropriate documentation of a current driver's license would result in termination. Avila was terminated on March 26, 2012. This temporal proximity is sufficient to satisfy Avila's causation burden at this stage. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (observing that for temporal proximity alone to meet prima facie burden, temporal proximity must be "very close" and citing cases finding temporal proximity based on three- and four-month delays satisfied prima facie burden); *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 & n.6 (5th Cir. 2015) (acknowledging that temporal proximity alone can establish prima facie case and holding that temporal proximity of seven months satisfied prima facie burden as to causation); *Haire v. Board of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 368 (5th Cir. 2013) (concluding that temporal proximity of three months between filing of EEOC charge and adverse employment action in

24

addition to gradual changes in plaintiff's job duties was sufficient to establish causation element of prima facie case).

### UPS's legitimate, nondiscriminatory reason

Because Avila met his prima facie burden to show causation, UPS had the burden to present a legitimate, nondiscriminatory reason for Avila's termination. *See CSC*, 376 S.W.3d at 823; *Hernandez*, 350 S.W.3d at 286. UPS presented as summary judgment evidence the CBA, which provides that an employee who loses his driver's license for driving under the influence of alcohol will be offered alternative work "not to exceed one year" and shall be returned to driving after completion of a rehabilitation program "provided his/her driving privileges have been restored." UPS also presented evidence that possessing a valid driver's license was listed as an essential job function in the job description for a driver position. Further, the summary judgment evidence showed that Avila's termination letter was dated 10 days after the expiration of the one-year period following his placement in an inside, warehouse position, as provided for in the CBA, and that at the time of his termination, Avila had not presented UPS with a valid, unrestricted driver's license and had not obtained clarification from the court concerning the requirement of an ignition interlock device on UPS-owned vehicles, as directed by the Grievance Committee. Thus, UPS presented a legitimate, nondiscriminatory reason for terminating Avila. *See CSC*, 376 S.W.3d at 823; *Hernandez*, 350 S.W.3d at 286.

**Avila's evidence of pretext**

UPS's showing of a nondiscriminatory reason for its termination of Avila triggered Avila's duty to create a material fact issue as to whether UPS's stated reason for terminating him was merely a pretext for a real, discriminatory purpose. *See Gee*, 289 F.3d at 345; *CSC*, 376 S.W.3d at 823. Avila relies on circumstantial evidence to show a causal link between his EEOC and workers' compensation claims and his termination. *See Parker*, 365 S.W.3d at 67; *Melendez*, 477 S.W.3d at 312. We address each category of circumstantial evidence in turn.

*Temporal proximity*

Avila contends that temporal proximity to both his EEOC complaint and his workers' compensation claim establish causation as to retaliatory discharge. While Avila's termination was very close in time to his workers' compensation claim and somewhat close in time to his EEOC complaint, temporal proximity, standing alone, is not sufficient proof of but for causation at this stage, particularly in light of evidence of UPS's legitimate, nondiscriminatory reason for his termination. *See Strong*, 482 F.3d at 808 (rejecting "notion" that temporal proximity standing alone can be sufficient proof of but for causation); *Wooten*, 788 F.3d at 499 n.6 (explaining that while temporal proximity alone can in some cases establish prima facie case, it cannot, alone, prove causation); *Willis v. Nucor Corp.*, 282 S.W.3d 536, 546 (Tex. App.—Waco 2008, no pet.) (stating that temporal proximity alone is insufficient to raise genuine issue of material fact). Thus, Avila has not created a material fact issue as to causation based solely on his evidence of temporal proximity of either his EEOC complaint or his workers' compensation claim. *See Wooten*, 788 F.3d at 499 n.6; *Strong*, 482 F.3d at 808; *Willis*, 282 S.W.3d at 546.

26

*Knowledge of Workers' Compensation Claim*

Concerning his EEOC complaint, Avila argues that the summary judgment evidence shows that McKirnan, the ultimate decision-maker regarding his termination, had knowledge of his EEOC complaint, citing her testimony that she did not receive the complaint but "was contacted by [UPS's] attorney." However, when asked whether there was anything that would have motivated UPS to want to terminate Avila for filing his EEOC complaint, McKirnan testified, "Absolutely not. I crafted the letter [of termination], and I had no knowledge of any Workers' Comp. Claim or the Charge of Discrimination." McKirnan did not state when she was informed of the EEOC complaint by the UPS attorney, but read in context, that statement appears to clarify that at some time after the fact she learned of the complaint from the attorney.

As for his workers' compensation claim, Avila testified that he informed his supervisors of his injury; that he was escorted to the doctor by another supervisor; that yet another supervisor completed an injury report; and that when Robertson presented him with his termination letter, he informed Robertson that he believed he was being retaliated against for filing a workers' compensation claim. However, Avila presented no evidence that any of these supervisors had any role in the decision to terminate him. Rather, the summary judgment evidence established that McKirnan was the sole decision-maker in Avila's termination and that she had no knowledge of either claim at the time of her decision. Further, an employer's knowledge of a workers' compensation claim, standing alone, does not establish a causal connection. *See Love v. Geo Grp., Inc.*, No. 04-12-00231-CV, 2013 Tex. App. LEXIS 3374, at *9 (Tex. App.—San Antonio Mar. 27, 2013, no pet.) (mem. op.); *Adams v. Oncor Elec. Delivery Co.*, 385 S.W.3d 678, 683 (Tex.

27

App.—Dallas 2012, no pet.); *Willis*, 282 S.W.3d at 546. We conclude that Avila has not created a material fact issue as to causation based on knowledge of his EEOC complaint or his workers' compensation claim by the person making the decision to terminate him. *See Love*, 2013 Tex. App. LEXIS 3374, at *9; *Adams*, 385 S.W.3d at 683; *Parker*, 365 S.W.3d at 67; *Willis*, 282 S.W.3d at 546 (stating employer's knowledge of claim alone is insufficient to raise genuine issue of material fact).

### *Negative attitude*

Avila urges that UPS's negative attitude was circumstantial evidence of UPS's retaliatory discharge of Avila for filing a workers' compensation claim. Avila testified that the supervisor who accompanied him to the doctor instructed him to tell the doctor to release him to work without restrictions and that when the doctor concluded that Avila could return to work but with restrictions, the supervisor gave Avila a "rather harsh look," indicating that she was not happy with him. Avila also testified that while Avila was still wearing a knee brace, another supervisor asked him when he was "coming back to work," suggesting that he did not consider Avila's alternative warehouse position to be "work." Avila also cites to his testimony that he was terminated on the day that UPS received notice of his OSHA complaint related to the spill on which he fell and sustained injury. Avila contends that these incidents are evidence of UPS's negative attitude toward him.

Again, Avila produced no evidence that any of these supervisors were involved in the decision to terminate him or had any authority over the termination decision. To show discriminatory intent, comments by others not involved in the employee's termination must be

proximate in time to the termination, made by those with authority over the decision, and related to the decision to terminate. *Willis*, 282 S.W.3d at 547. "Mere stray remarks" are generally insufficient to show employer's negative attitude. *See id.* Avila's testimony concerning the stray comments made by non-decision-making supervisors does not show a negative attitude and does not create a material fact issue as to causation. *See Love*, 2013 Tex. App. LEXIS 3374, at *9 (concluding that evidence that supervisors who were not involved in decision to terminate plaintiff expressed frustration regarding his injury and were upset he could not work more than eight hours did not demonstrate employer's negative attitude); *McFarlane v. Goodman Mfg. Co.*, No. 01-03-00502-CV, 2004 Tex. App. LEXIS 5148, at *14–15 (Tex. App.—Houston [1st Dist.] June 10, 2004, no pet.) (mem. op.) (concluding that evidence of supervisor's comment "Fall asleep, you get fired" was "stray remark," was not competent summary judgment evidence, and did not show employer's negative attitude); *see also Willis*, 282 S.W.3d at 546 (concluding that remark remote in time and unrelated to decision to terminate was not circumstantial evidence of employer's negative attitude).

### *Failure to adhere to company policy*

Avila contends that UPS's failure to follow company policy concerning cleaning up spills shows that he was terminated in retaliation for filing a workers' compensation claim. Avila testified that UPS policy provides that employees are to notify their supervisors of spills; that when he fell, he did so; that spills are supposed to be cleaned up immediately; and that no one ever cleaned up the spill, in violation of company policy. The summary judgment evidence also included McKirnan's testimony that UPS has a "progressive discipline policy." Avila argues that UPS failed

29

to give him an "official warning letter" prior to his termination, instead giving him only an "Official Notice of Discharge," in violation of the discipline policy.

Even assuming Avila is qualified to testify that UPS's policy calls for spills to be cleaned up "immediately," evidence that UPS violated policy when the spill was not timely cleaned up is irrelevant to UPS's decision to terminate Avila. Further, Avila offered no evidence that McKirnan's general statement that UPS has a progressive discipline policy means that Avila was entitled to an "official warning letter." Even if Avila had offered such evidence, he was, in fact, provided a warning letter on March 13, 2012, in which he was reminded that he had until March 16, 2012, to provide UPS with a valid, unrestricted driver's license and that failure to do so would result in termination. We conclude that Avila did not create a material fact issue as to causation based on UPS's alleged failure to adhere to company policy. *See Melendez*, 477 S.W.3d at 312; *Jones v. NRG Tex., LLC*, No. 10-16-00260-CV, 2017 Tex. App. LEXIS 3717, at *8–9 (Tex. App.—Waco Apr. 26, 2017, no pet.) (mem. op.) (concluding that where evidence showed that employee signed acknowledgment that he could be terminated for insubordinate conduct and that employer documented employee's odd behavior, employee did not show company failed to follow its progressive discipline policy); *Peine v. HIT Servs. L.P.*, 479 S.W.3d 445, 453–54 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that employee did not create fact issue that employer terminated him in violation of company policy where employee failed to cite which policy company allegedly violated or evidence of how company violated policy).

*Less favorable treatment than similarly situated employees*

Avila argues that he was treated less favorably than other similarly situated employees who were injured and filed workers' compensation claims. Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. *Alamo Heights*, 544 S.W.3d at 791. "This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" *Ineichen v. Ameritech*, 410 F.3d 956, 960–61 (7th Cir. 2005). Avila testified that three other employees who were also injured and were assigned to warehouse duties were paid more than he was paid after reassignment to the warehouse. However, Avila's complaint about pay is irrelevant to his claim of retaliatory discharge. Even assuming Avila's reduced pay has some relevance to his termination, the summary judgment evidence showed that Avila's pay was reduced almost one year prior to his injury and claim, and Avila produced no evidence that his pay was reduced after he was injured, thus precluding any causal connection between his claim and his reduced pay. Moreover, Avila's pay was adjusted based on his seniority in compliance with Article 16 of the CBA. *See Melendez*, 477 S.W.3d at 313–18 (stating that if termination is required by policy, causal link to workers' compensation claim cannot be shown). And Avila produced no evidence of what the other three employees were paid, that they were paid more than he was paid, or that they were similarly situated with regard to the positions they held or their seniority. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017) (stating that employees who hold different jobs are not similarly situated). Thus, Avila failed to

31

create a material fact issue on his claim for retaliatory discharge for filing a workers' compensation claim on this basis. *See Alamo Heights*, 544 S.W.3d at 791; *Rincones*, 520 S.W.3d at 584.

### *Stated reason for discharge was false*

Avila also argues that he was treated less favorably than another similarly situated employee in support of his contention that UPS's stated reason for terminating him was false. Avila re-urges the argument that he was treated differently from Caka when Avila was terminated instead of being allowed to return to a driver position with an occupational license. However, as discussed above, the summary judgment evidence showed that the only difference in UPS's treatment of Caka and Avila was that Caka was inadvertently allowed to drive with a restricted occupational license for a brief time and that when the safety department discovered the mistake, Caka was immediately removed from his driving position. UPS also produced evidence that, unlike Avila, Caka had his driving privileges restored within the one-year period for assignment to alternative work and was therefore qualified under the terms of the CBA to resume working for UPS as a driver. *See Ineichen*, 410 F.3d at 960–61 (stating that for employees to be similarly situated, there must be no differentiating circumstances that would distinguish employer's treatment of them).

Avila also argues that UPS's stated reason for termination was false because in its response to Avila's claim for unemployment benefits, UPS stated that Avila had been terminated for failing to timely report his DWI, yet McKirnan testified that the reason stated in the response was incorrect and UPS acknowledged in its motion for summary judgment that Avila reported his DWI in a timely manner. However, Avila did not present this argument in the trial court and has waived it on appeal. *See* Tex. R. App. P. 33.1. Even if he had not waived this argument, we do not find it

32

persuasive. UPS offered summary judgment evidence that the reason it terminated Avila was that the one-year period for work in an alternative position under the CBA had expired and that Avila had not restored his driving privileges by obtaining an unrestricted license. Avila failed to produced any evidence to create a material fact issue as to whether that legitimate, nondiscriminatory reason for his termination was false. *See Melendez*, 477 S.W.3d at 313–18 (concluding that employee failed to show retaliation for filing workers' compensation claim where evidence showed employer terminated employee pursuant to uniform enforcement of reasonable leave policy).

Viewing the evidence in the light most favorable to Avila, *see Tamez*, 206 S.W.3d at 582, we conclude that Avila failed to create a material fact issue as to UPS's legitimate, nondiscriminatory reason for refusing to return Avila to a driver position and for terminating him. Thus, the trial court did not err in granting UPS's motion for summary judgment on Avila's retaliation claim under the TCHRA and the TWCA. We overrule Avila's second issue as to his retaliation claim, thus overruling his second issue in its entirety. Accordingly, we do not reach Avila's first issue, in which he argues that the trial court erred in finding that his discrimination and retaliation claims are preempted by section 301 of the Labor Management Relations Act and in granting UPS's motion for summary judgment. *See* Tex. R. App. P. 47.1 (providing that court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal).

**Motion for Continuance**

In his third issue, Avila argues that the trial court erred in denying his motion for continuance of the hearing on UPS's motion for summary judgment. He contends that there was

good cause for the continuance because his attorney had withdrawn and he filed an affidavit in support of his motion, as required by Rule 251. *See* Tex. R. Civ. P. 251 (providing, in relevant part, that no continuance shall be granted except for sufficient cause supported by affidavit).

We review a trial court's denial of a motion for continuance for abuse of discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). UPS filed its motion for summary judgment on October 16, 2015, and Avila filed a reply on December 8, 2015. UPS filed supplemental evidence and a reply on December 21, 2015, and Avila filed an amended response on January 7, 2016. Thus, Avila had known since at least some time in October that UPS sought summary judgment but continued to act pro se. The reporter's record reflects that the motion was originally set for hearing on December 9, 2015. Avila appeared pro se and obtained a continuance but appeared pro se again at the hearing on January 14, 1016. Avila argues that after he was granted a continuance, he obtained an attorney who accepted payment of one-half of the fee but that when they met to discuss the case on December 30, 2015, the attorney declined the case and refunded his fee payment.

On appeal, Avila does not offer any explanation for why he did not obtain an attorney between his receipt of UPS's motion sometime in October and the December 9 setting or between December 30 and the re-set hearing on January 14. In light of these time periods and considering that one continuance was granted, we conclude that the trial court did not abuse its discretion in denying a second continuance. *See Marchand*, 83 S.W.3d at 800; *see also* Tex. R. Civ. P. 253 (generally providing that "absence of counsel will not be good cause for a continuance or postponement of the cause when called for trial, except it be allowed in the discretion of the court,

34

upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record"); *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984) ("In civil cases in which the absence of counsel has been urged as grounds for a continuance or new trial, courts have required a showing that the failure to be represented at trial was not due to the party's own fault or negligence."). We overrule Avila's third issue.

## CONCLUSION

Having overruled Avila's dispositive issues, we affirm the trial court's summary judgment.

_____
Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: August 29, 2018